# Yorks's Appeal.

1. The administration of estates in Pennsylvania is a legal and not an equitable system, resting as it does, upon statutes.

2. An executor or an administrator is a trustee for the benefit of such creditors only as establish their claim in a legal manner; the death of a debtor does not, per se, establish a claim.

3. The omission of an executor to give notice to creditors and others of the granting of letters testamentary to him, does not estop him from claiming the benefit, in the Orphans' Court, of the Statute of Limitations as a bar to a claim which a creditor did not present until more than six years after the issuing of letters testamentary.

4. As between the executor and creditors of an estate, no trust exists of that peculiar kind that is within the exclusive control of a court of

[Yorks's Appeal.]

equity, and to which the Statute of Limitations cannot be pleaded; the relation between them is simply that of debtor and creditor, and the Statute of Limitations may be set up in any forum that has jurisdiction of the case, including the Orphans' Court.

5. McClintock's Appeal (5 Casey, 360) and the cases which have followed it, overruled.

May 1st, 1885.  Before GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.  MERCUR, C. J., absent.

APPEAL from the Orphans' Court of *Montour County :*  Of January Term 1885, No 470.

Appeal by Martha Yorks and C. E. Yorks, executors of the will of William Yorks, deceased, from a decree of said court confirming the report of the auditor of their account, and ordering distribution in accordance with said report.

The facts as they appeared before the Auditor (F. C. Angle, Esq.) were substantially as follows : On August 21st, 1887, William Yorks died, leaving a will wherein he appointed his wife Martha Yorks and his son C. E. Yorks, executors. On August 29th, 1877, letters testamentary were granted to them and they entered upon their duties, without, however, advertising the fact that letters had been granted to them. On August 15th, 1884, the executors upon citation by Peter Baldy, surviving executor of John Heiner, deceased, filed their first and partial account, and on September 20th, 1884, this account was confirmed by the court and an Auditor was appointed to distribute the balance, viz.: $5,088.55, being the proceeds of the personal estate.

Before the Auditor, counsel for Peter Baldy presented for payment a certain promissory note, of which the following is a copy :—

DANVILLE, PA., Nov. 13th, 1872.

On demand, we, or either of us, promise to pay to the order of Joseph Diehl and Peter Baldy, Jr., Executors of John Heiner, late of Montour County, deceased, Twenty-two Hundred Dollars, with interest from date, at the rate of eight per centum per annum.

I. X. GRIER,
SAM'L YORKS,
WILLIAM YORKS,
W. C. YOUNG,
M. H. WALLIZE,
B. R. GEARHART.

It appeared that no notice had been given to the executors, nor had they any knowledge of the existence of the note in question until June, 1884.  It also appeared that Martha

[Yorks's Appeal.]

Yorks, who by the will of her husband was entitled to all of the personal estate after the payment of debts, received during September, 1884, the personal assets from her co-executor and receipted for the same. Counsel for the executors pleaded the Statute of Limitations, and laches on the part of the claimants, but the Auditor allowed the note with interest in full to date.

Exceptions were filed to this report, but the court overruled the same and confirmed the report, decreeing distribution in accordance therewith. The executors thereupon took this appeal, assigning for error, inter alia, the action of the court in overruling the plea of the Statute of Limitations, and in not finding the claimant guilty of such laches as to preclude him from coming in on this fund.

*H. M. Hinckley* for appellants.—McClintock's Appeal (5 Casey, 360) and the cases following it, upon which rests the claim for recovery in this case, were decided on the ground that the law created a trust at the death of a debtor, and that the Statute of Limitations could not run against it, yet there is a number of cases which hold that even an express direction in a will for the payment of debts does not constitute such a trust as will prevent the running of the Statute of Limitations: Smith *v.* Porter, 1 Binney, 209; Man *v.* Warner, 4 Wharton, 478; Freake *v.* Cranefeldt, 3 M. & C., 499; Scott *v.* Jones, 4 Cl. & F., 397. Whenever the legislature has limited a period for law proceedings, equity will, in analogous cases, consider itself bound by the limitation: Hovender *v.* Lord Annesley, 2 Sch & L., 632; Smith *v.* Clay, 3 Bro. Ch., 640 note; Bond *v.* Hopkins, 1 Sch. & L., 413; Buehler *v.* Buffington, 7 Wright, 294; Todd's Appeal, 12 Harris, 431. Now, if recovery in an action at law would be barred in six years against an executor, then recovery in the Orphans' Court, for the same debt, by analogy to the Statute of Limitations should be limited to the same time. True, in law, the six years begins in the lifetime of the debtor, or whenever the right of action accrues. Recognizing the doctrine of McClintock's Appeal, the six years in the Orphans' Court would begin at the creation of the trust. But the limit would be the same. The creditor in his action at law would be barred in six years. His claim on the trust fund raised at the death of his debtor would end in six years. If then this rule is established, the recovery on this note is barred at law, and is prevented in equity by analogy to the Statute of Limitations.

*James Scarlet* and *William J. Baldy*, for appellee.—The Statute of Limitations is not a bar to the allowance of a debt

against an estate where less than six years from the time it accrued has elapsed at the death of the debtor, although the six years may have expired before settlement, and distribution of the estate: McClintock's Appeal, 5 Casey, 360; Mitcheltrees Admr's *v.* Veach, 7 Casey, 455; McCandless Estate, 11 P. F. S., 9.

Yorks's executors held this money as a trust fund, which was within that class of trusts that are not affected by the Statute of Limitations. It was upon this principle that McClintock's Appeal (*supra*) was decided, and not because six years had not elapsed from the death of the debtor to the time of distribution.

Mr. Justice PAXSON delivered the opinion of the court, October 5, 1885.

At the death of William Yorks in 1877 the note in controversy was not barred by the Statute of Limitations. Letters testamentary upon his estate were taken out on August 29th, 1877, which was about a week after his death. On July 3d, 1884, Peter Baldy, surviving executor of John Heiner, deceased, presented to the Orphans' Court of Montour County his petition in which he claimed to be a creditor of William Yorks, and prayed for a citation to compel the executors of said William Yorks to file an account. The citation was awarded, and in obedience thereto the first and partial account of the executors of said William Yorks was filed August 15th, 1884, showing a balance in the hands of the executors, after payment of debts, of $5,088.55, which balance, it was claimed in said account, had been paid to Martha Yorks, the widow, under the terms of the will. The account was referred to an auditor, and then the note in controversey was presented, and a demand made upon the estate of William Yorks for payment. This was about twelve years after the note had matured, and within a few days of seven years from the time of the granting of the letters testamentary. The first knowledge the executors appear to have had of the existence of the note was in June 1884, when attention was called to it by the executors of Joseph Diehl, deceased, who was one of the payees.

It was urged on behalf of appellants that the note in controversy was barred by the Statute of Limitations. It has been repeatedly held, however, that the Statute does not apply in the Orphans' Court. The reasons for this ruling will be found in McClintock's Appeal, 5 Casey 360; McCandless, Estate, 11 P. F. S., 9. Both cases, and more which have followed in the same line, proceed upon the ground of express trust. It was said by BLACK, J. in McClintock's Appeal: "The right which a creditor has to his just proportion of the prop-

erty which his deceased debtor dies possessed of, vests at the instant of his death. Before his death he has but a right of action; afterwards he has an interest in the goods which the debtor left behind, precisely such an interest as the next of kin would have if no debts existed. The only reason why each one may not immediately take what belongs to him, is because it is impracticable to make a just distribution without some delay. The law, therefore, takes the goods of a decedent into its custody, and bids the claimants to wait until their rights can be ascertained. An officer of the law commits them to the care of an administrator upon the express trust and with a solemn injunction to give each his due. The creditor need not bring suit; the assets applicable to his debts are already in the hands of a legal officer whose duty to pay it over will be enforced by the proper authorities without an action. All that he is required to do is to make known his claim within a given time. Of course the trust of the administrator is for the use of all the creditors whose debts are subsisting and valid in law and equity at the time of the decedent's death. He has no right to give one a preference over another. The assets belong to all, and he must pay all, if there be enough to reach. In case of deficiency, the loss is to be equally borne. He cannot object to a claim which was good when he accepted the trust, on the ground that it has since reached an age greater than six years."

Mr. Justice WILLIAMS in McCandless' estate has tersely stated the reason of the rule as follows: " But to exempt the trust from the operation of the statute, it must be direct and exclusively cognizable in a court of equity, and the question must arise between the trustee and the cestui que trust: Lyon v. Marclay, 1 Watts, 271; Zacharias v. Zacharias, 11 Harris, 452; Keller v. Rhoads, 3 Wright, 520; Barton v. Dickens, 12 Id., 522; and this is precisely the character of the trust which the law creates and establishes between the personal representations of a decedent and his creditors."

Speaking for myself I regret that the rule as applicable to a strict, technical trust, the execution of which is exclusively with the conscience of a chancellor, should ever have been applied without qualification to executors and administrators. I can understand that in a technical trust, cognizable exclusively in equity, a chancellor would never permit the plea of the statute, or any analogy to it, in a contest between a trustee and his cestui que trust. But in the Orphans' Court the contest is not, as the cases above cited assume, exclusively between the creditor and the trustee. Back of both are the next of kin, who are entitled to the estate after creditors are paid, and who are vitally interested in defeating stale

claims. And in an action at law legatees or the next of kin may plead the statute, although the administrator should refuse to do so: Kittera's Estate, 5 Harris, 416; Hoch's Appeal, 9 Id., 280; Ritter's Appeal, 11 Id., 95. The administration of estates in Pennsylvania is a legal, not an equitable system. It rests upon statute law, and is a matter with which the conscience of a chancellor has nothing whatever to do. The trusts protected from the statute, as before observed, are technical trusts, with which the law has no concern, and which are cognizable exclusively in chancery. A creditor of an estate may proceed at law, and is not necessarily obliged to resort to the chancellor.

No fault is found with the rule laid down in the cases referred to if it had been properly qualified. An executor or administrator is certainly a trustee. We may concede that when the creditor has established his claim against the estate it cannot be defeated by the statute or any analogy to it. He then has seated his claim upon the trust and may successfully invoke the rule in chancery. But the question which has been left open in McClintock's Appeal and other cases is, when must he present and establish his claim? When I say the question which has been left open, I mean the question which has been left undecided, not to the reasoning of those cases. In McClintock's Appeal the claim was made within six years from the death of the decedent; in McCandless' Estate over six years had expired since the death of the decedent, but during nearly all of that time there had been no executor or administrator who could have been sued, or to whom the claim could have been presented. In the case in hand over four years of the statute had run when the decedent died. Grant that under the authorities cited his death stopped the running of the statute so far as the Orphans' Court is concerned. We will not question this now because it has been decided. But is there to be no limit to the demand against a dead man's estate? This claim was not presented until nearly seven years after the letters testamentary were taken out. If it may be presented seven years, it may be presented seventeen years thereafter. In the meantime estates are settled and the assets distributed to those entitled thereto. It is no answer to say that a refunding bond protects the executor in case debts are subsequently proved against the estate. The distributees are entitled to some protection; at least to some consideration. They may have spent the money or acquired more expensive habits of living, and it would be unjust and cruel to oblige them to refund after a long series of years to pay a claim of the existence of which the holder never informed the executor until more than six years after the date of his letters testa-

mentary. There is nothing in the law by which estates are administered in Pennsylvania which contemplates such a state of things as this. On the contrary it all looks to a prompt settlement of estates. The 19th section of the Act of 29th March 1832, P. L. 194, expressly provides that in case of a deficiency of assets, a creditor who has not exhibited his account to the executor or administrator within twelve months after public notice, shall not be entitled to any dividend of the remaining assets. Under this Act it has been held that a creditor who does not claim before the filing of the auditor's report, is too late: Mitchell's Estate, 2 Watts, 87; and see Stover's Appeal, 3 W. & S., 154.

The title of the creditor to be let in upon the trust depends upon his debt. When once that debt is fixed it attaches to the trust. The learned judge below held that the debt was fixed at the death of the decedent. This ruling may perhaps find some countenance in the remark before quoted of Judge BLACK in McClintock's Appeal, that the administrators " cannot object to a claim which was good when he accepted the trust, on the ground that it has since reached an age greater than six years." But how are we to say that this debt, which was not presented to the executors within twelve years after it had matured, and nearly seven years after the letters testamentary were granted, was a good debt at the time of decedent's death? During all these years witnesses may have died, vouchers or evidence of payments may have been lost, and if the mere fact that the note was outstanding fixes the debt, so as to seat it on the trust, there is little protection for the estates of dead men; and the law is weakest just where it ought to be the strongest. The estates of deceased persons are subject to no greater peril than stale claims, held back perhaps until all oral or written testimony has been lost. Living persons are protected to some extent from stale claims; it accords with neither justice nor public policy to withdraw all protection from the estates of the dead.

The appellees avoided a court of law because there the statute would have been a flat bar to a recovery. They invoke the aid of the Orphans' Court because there the statute cannot be pleaded; the practice in the Orphans' Court being analagous in some respects to the practice in equity. But equity has its law as well as law its equity, and he who invokes the equity powers of that tribunal is bound by the principles which move courts of equity. If there is anything upon which equity looks with disfavor it is a stale claim. On the question of the lapse of time equity follows the analogy of the Statute of Limitations: Todd's Appeal, 12 Harris, 431; Bueh-

ler's Heirs *v.* Buffington, 7 Wright, 278 ; Jones *v.* Turberville, 2 Vesey, 11.

The appellees urged that the executors filed no account until compelled to do so in obedience to a citation, and that the widow who was one of the executors, claimed the estate under the will; that the executors should have filed their account at the end of the year, in order that creditors could have come in upon the fund; that the executors could not defeat the appellee's claim by their own laches.   It is not the laches of the appellants that is in the way of appellees ; it is their own.   No one but a creditor or other person interested in the estate has a right to object to the delay in filing the account.   If there are no creditors, and other parties in interest do not complain, what does it matter?   The appellees cannot complain because they never notified the executors of their demand.

That the widow, as one of the executors, appropriated the residuary estate to her own use, is not the subject of criticism. The will gave it to her, and in the absence of debts or any notice thereof she was entitled to it.   An executor may distribute an estate to and among the persons entitled, taking of course the risk of its being a proper distribution.   In this case the widow retained the residuary estate after paying all known creditors.   She certainly had a prima facie right to it. She could hold it as her own in equity and good conscience. She may have spent it or lost it by bad investments.   If she is to be surcharged with it now she may be unable to replace it, and without any fault of her own be subject to the possible charge of embezzlement.   Had the appellees presented their claim to the executors this could not have happened.   A distribution then would have been in the face of notice and would have been of no avail.   If the executors desired to contest the claim they could have filed their account and in this manner have compelled the appellees to come forward with their proofs to sustain it.   As suits are not brought upon claims in the Orphans' Court, the presentation of the demand to the executor or administrator may be regarded as its equivalent so far as regards the status of the claim.

Our conclusion is that while the Statute of Limitations may not be pleaded in the Orphans' Court, yet that said court has the power in a proper case to apply the statute by way of analogy, and that where no claim is made upon the executors for six years after the time they have taken out their letters testamentary, it is entirely proper to apply it.   We wish it understood that our remarks apply only to an attempt to establish a claim ; to seat it on the trust, and not to an effort to defeat the payment of a claim which has been so established. As to the latter class of cases we adhere to the doctrine of

McClintock's Appeal, and hold that there is a trust which is beyond the reach of the statute or any analogy thereto.

This view of the case renders a discussion of any of the other questions involved unnecessary.

> The decree is reversed at the cost of the appellees, and it is ordered that distribution be made in accordance with this opinion.

GORDON, J., dissented.

The appellee subsequently moved for a re-argument, on the grounds, 1st, that the executors of William Yorks, deceased, failed to give notice of the granting of letters testamentary to them as required by the Act of February 24th, 1834, (P. L. 73) ; 2d, that an express trust was created by the following clause in the will: " It is my will and I do order that all my just debts and funeral expenses be paid as soon after my decease as may be practicable " ; 3d, *stare decisis.*

The motion for re-argument was refused on January 4th, 1886, Mr Justice PAXSON delivering the opinion of the court.

We have carefully considered the motion for a re-argument in this case. The principal ground upon which it is asked, and the only one necessary to discuss, is, that the executors did not comply with the law by giving notice to creditors and other persons interested, of their taking out of letters testamentary. From this it was argued that the delay of the appellees in presenting their claim against the estate of William Yorks, deceased, would not bar the recovery of said claim.

That such a defence would be no answer to the plea of the Statute of Limitations in an action at law is too plain for argument. The death of a debtor does not stop the running of the statute : Man *v.* Warner, 4 Wharton, 455 ; Micheltree's Adm' *v.* Vrech, 7 Casey, 455 ; McCandless' Estate, 11 P. F. S., 9 ; Campbell *v.* Fleming, 13 P. F. S., 242. Whatever responsibility the executors may have incurred by their neglect in this matter, it is manifest that such neglect would not toll the statute. It is not even asserted that the executors of John Heiner's Estate did not know of Mr. York's death and of the probate of his will, while it is in evidence that one of them had actual knowledge thereof and transacted business with York's executors as such.

We are reminded, however, that we are in the Orphans' Court, where the rule at law does not apply, and McClintock's Appeal, 5 Casey, 360 was again invoked and pressed upon our attention. The principle decided in the case in hand was not decided in McClintock's Appeal, and I endeavored to point

out the distinction between the cases.  Subsequent examination and reflection have satisfied us that it was a mistake not to have overruled McClintock's Appeal,  That we did not do so then was due in part to two reasons.  It was not considered absolutely essential to the decision of the present case, and we have great reluctance in revising and changing what our predecessors have done.  Where a rule of property has been established it is better to let it stand, although subsequent experience should satisfy us that it is an erroneous one.  A rule of property can only be changed by an Act of Assembly without unsettling titles.  But McClintock's Appeal is not a rule of property, and it was a mistake.  It is far better when this court commits a blunder to correct it in a manly way than to imitate the ostrich by hiding our heads in the sand. McClintock's Appeal deliberately overturned the law as it had stood for more than one hundred years, and repealed the Statute of Limitations so far as it applies to the Orphans' Court. All this was done in an opinion of less than a page.  No authorities were cited, for none existed, and the reasoning by which that judgment was sought to be sustained is unsatisfactory.  It has been followed with reluctance since, and it is not too much to say that it never had the approval of any considerable body of the profession.  It is an excrescence upon our system of jurisprudence which cannot stand, and the knife might as well be applied now as to wait a few years longer.  The delay would only result in a few more dead men's estates being plundered.  That it has only worked mischief, and that continually, we have ample means of knowledge. Without any authorities in its support, with a long line of cases against it which were not even noticed, and in the face of an Act of Assembly, by the mere stroke of the judicial pen it deprived the estate of a dead man of the benefit of the Statute of Limitations, while it left his living antagonist in the full enjoyment of it.  That decision further involves the anomaly, that in actions at law the executor may plead the statute, while in the Orphans' Court he may not do so.  This singular result was reached in McClintock's Appeal by applying a rule in chancery to a case for which it was never intended.  It is evident to my mind that the opinion was hastily written and without the examination of any of the authorities. Had the learned judge who wrote it gone over them I am satisfied he never would or could have reached the conclusions he did.  The mistake consists in this: Starting out with the conceded fact that an executor or administrator is a trustee, he assumed that it was such a trust as came within the well known rule in chancery that the Statute of Limitations is not a

bar to a proceeding in equity between the *cestui que trust* and his trustee.

That the statute does not apply to cases of trust and fraud is familiar law; it is to be found in every text book, and is not disputed. But there are many express trusts to which the rule does not apply. In Kane *v.* Bloodgood, 7 Johns. Chan., 90, that eminent jurist, Chancellor KENT, held that every deposit is a direct trust; every person who receives money to be paid to another, or to be applied to a particular purpose is a trustee; the cases of hirer and letter to hire, borrower and lender, pawner and pawnee, principal and agent are all cases of express trust; yet such cases are not taken out of the Statute of Limitations when sued at law, and ought not to be, and are not, by the better decisions in chancery; and he comes to the conclusion that the trusts not to be affected by the statute in chancery, are those technical and continuing trusts, which are not cognizable at law, but which fall within the peculiar and exclusive jurisdiction of chancery. The foregoing will be found cited with approval in App *v.* Driesbach, 2 Rawle. at page 302, where there is an extended review of the authorities cited by Chancellor KENT, and Kane and Bloodgood is thus made of binding authority in this state. It is a leading case, decided with great care, and may be considered as settling the law in New York, and has been fully recognized and adopted here. From it we gather that those trusts to which the Statute of Limitations does not apply must be:

1.—Direct and continuing.

2.—Exclusively cognizable in equity.

3.—Arising between trustee and cestui que trust.

Whatever may have been the case formerly, I do not understand there is any dispute now as to the correctness of the foregoing summary. At one time the decisions were vague upon this subject. Some of the opinions are loose, and say that trusts in general, and other direct trusts, are not barred by the statute. This is notably so in the earlier English cases. "But these general expressions were soon qualified. Modern cases gradually narrowed the limits of the doctrine, and at length have defined it with precision. It would be labor lost, to follow step by step, the long and tortuous series of cases down to Kane and Bloodgood, and Murray and Coster, in which the final results are accurately developed, and to App *v.* Dreisbach, the Pennsylvania case, which recognizes those New York cases, and renders them conclusive authority in this court:" Warner's Estate, 2 Wh., 295.

This brings us directly to the question whether as between the executors and the creditors of the estate, there is such a

trust as comes within the above description ? I throw out of view the question of the character of the trust between the executor and next of kin and legatees. That question is not before us and will not be considered further than to remark that in those instances there is a trust pure and simple. No relation of debtor and creditor exists or can exist in such cases. But in the case of creditors the ordinary relation of debtor and creditor existed at the time of the death of the testator, and it continues after that event. Hence it was said in Man *v.* Warner, 4 Wharton, at page, 477 : " In a court of law an executor or administrator represents the deceased ; and there is no more trust between him and the creditor, than there was between the deceased in his lifetime and the creditor ; and it has not been said that the statute could not be pleaded with effect in a court of law." Conceding for the sake of the argument that in the Orphans' Court the executor may be regarded as a trustee for the creditors as well as for the legatees and next of kin, what then? Is it a trust of that direct and peculiar character as is only cognizable in chancery? To state this proposition is to answer it. Here is a claim against a dead man's estate upon a promissory note. It would be absurd to say that such a claim is exclusively cognizable in equity. It is a legal claim enforced in a court of law. Indeed, it is only recently that the Orphans' Court had any jurisdiction over the claims of creditors : Warner's Estate, 2 Wh., 295. And now it is conceded that the jurisdiction of that court is only concurrent as to them. The remedy at law still exists unimpaired, and the creditor may commence his suit and thus toll the statute.

The relation which subsists between a creditor and the estate of his deceased debtor, is that of debtor and creditor, with a trust superadded, by means of which, and the machinery of the Orphans' Court, he can demand his proportion of the trust fund, after his claim has been established. When so established it may be said to be seated on the trust, and there is some room for the application of the principle of McClintock's Appeal. But in attempting to establish it the creditor is pursuing the estate of the decedent as his debtor ; no other relation exists but that of debtor and creditor, and the Statute of Limitations may be set up in any forum which has jurisdiction of the case.

· McCandless' Estate, 11 P. F. S. 9, as before observed, is one of the cases following McClintock's Appeal. It adds no strength to it, however ; on the contrary, it is weakened by a dissenting opinion of Mr. Justice AGNEW, which has not been and cannot be answered. The learned judge who delivered the opinion recognized the test as I have stated it, and then

assumes that the trust comes within the description. The only attempt which he makes to sustain this assumption is to show that there is *a* trust, which no one disputes. But there is not even an effort to show that it is a trust exclusively cognizable in equity, while the superadded relation of debtor and creditor is wholly ignored, as it was in McClintock's Appeal.

In Campbell *v.* Fleming, 13 P. F. S. 242, McClintock's Appeal received a damaging blow. Upon the trial of that case in the court below, the plea of the statute had been overruled. It was an action at law against the administrator. The judgment was reversed here, AGNEW, J., saying in delivering the opinion of the court: " To hold that when an action is brought for a debt against the administrator, the statute cannot be pleaded with effect, is to contradict all those cases in which it has been decided that a debt is not revived by a promise of the administrator to pay it: Fritz *v.* Thomas, 1 Wh. 66 ; Steel *v.* Steel, 2 Jones, 64 ; Clark *v.* Maguire, 11 Casey, 259. It contravenes also those deciding that the creditors and others interested may intervene and plead the statute: Hoch's Appeal, 9 Harris, 280 ; Ritter's Appeal, 11 Id. 96 ; Kittera's Estate, 5 Id. 416. In some of these cases the fund was in the Orphans' Court for distribution. How McClintock's Appeal can stand against all these cases I could not myself perceive, and therefore dissented from the judgment of my brethren last winter at Philadelphia, reaffirming it, in its application to the facts in the case of McCandless' Estate, 11 P. F. S., 9. In McClintock's Appeal not a cited case appears in the argument of counsel or the opinion of the court. It is counter also to the whole policy of restraining liens against the estates of decedents found in the Act of 24th February, 1834, as will be seen in a full summary in the opinion in the case of Trinity Church *v.* Watson, 14 Wright, 528. McClintock's Appeal has been recognized, however, within the narrow field of its facts; and my purpose is not to deny its authority, but to show that its sphere is not to be extended, and to add that we all regard it as inapplicable to a case where an action is brought directly against the administrator."

This case fully justifies the remark in another part of this opinion, that the court has followed McClintock's Appeal with reluctance, and that we were not long in confining it " within the narrow field of its facts."

I have no desire to elaborate this point. I think I have said enough to show, both upon reason and authority, that the trust between an executor or administrator and the creditors of a decedent's estate, is not a trust of that peculiar kind which is within the exclusive control of a chancellor, and to which the Statute of Limitations cannot be pleaded; that on

14 OUTERBRIDGE—6

the contrary, it includes the direct relation of debtor and creditor, in which either party may plead the Statute of Limitations.

Since McClintock's Appeal, the right to plead the statute has been allowed in a suit at law and denied in the Orphans' Court. The fact that the creditor could sue at law, and that the statute could be pleaded in such proceeding, is an answer to the assertion that there is a trust exclusively cognizable in equity. The right to plead it in one court and not in the other is, as before observed, an anomaly. I know of nothing to sustain it, and there is an overwhelming weight of authority against it. As they are all upon one side, a reference to a few of them will be sufficient. In Kane *v.* Bloodgood, supra, Chancellor KENT lays down this rule as follows: "As to those trusts which are the ground of an action at law, the statute is, and with reason ought to be, as much a bar in one court as in the other." And he further holds that a party is barred in equity whenever he could have brought his action at law, and neglected to do so while the limitation of the statute intervened. In other words, whenever a party may proceed either by a suit at law or by a bill in equity, and elects the latter, a court of equity will apply the statute precisely as at law. This rule was re-asserted in Murray *v.* Coster, 20 Johns. 576, and is the settled rule in New York. It is so in England. Thus in Smith *v.* Clay, 3 Bro. 639, *note,* Lord CAMDEN observed that "as often as Parliament had limited the time of action and remedies to a certain period in legal proceedings, the Court of Chancery adopted that rule, and applied it to similar cases in equity. For when the Legislature had fixed the time at law, it would have been preposterous for equity to countenance laches beyond the period that law had been confined to by Parliament." This, and a large number of other English cases are cited by Chancellor KENT, in Kane *v.* Bloodgood, supra, and I will not further refer to them than by quoting the language of Lord HARD-WICKE, in Sturrt *v.* Mellish, 2 Atk. 610: "I have therefore no hesitation in saying that, in a case where there is a concurrent jurisdiction in the courts of common law and equity, the rule must be the same, and the Statute of Limitations may be pleaded with the same effect in the one court as in the other. In cases of trust and fraud, peculiarly, appropriately and exclusively the objects of equity jurisdiction, according to the established doctrine, the statute cannot be pleaded."

The same doctrine has been repeatedly held by the Supreme Court of the United States. It is asserted in Willison *v.* Watkins, 3 Peters, 43, where Kane *v.* Bloodgood is cited with approval; also in Thomas *v.* Harvie's Heirs, 10 Wheaton, 146;

Elmendorf *v.* Taylor, Id. 153; Lewis *v.* Marshall, 5 Peters, 470; Miller *v.* McIntyre, 6 Id. 61; Badger *v.* Badger, 2 Wall. 87; Coulson *v.* Walton, 9 Peters, 62; U. S. Bank *v.* Daniel, 12 Id. 32; Rhode Island *v.* Mass., 15 Id. 233; Peyton *v.* Stith, 5 Id. 485; Harpending *v.* Dutch Church, 16 Id. 455; and when no statute covers the case, equity often acts upon its inherent doctrines of discouraging antiquated demands: Wagner *v.* Baird, 7 Howard, 234; Bowman *v.* Wathen, 1 Id. 189.

That the same rule exists in this State is too well settled to be controverted. It is sufficient to refer to Wallace *v.* Duffield, 2 S. & R. 521; Hamilton *v.* Hamilton's Executors, 6 Harris, 20; App *v.* Driesbach, supra. It is useless to multiply authorities.

Equity abhors laches. Hence, I can imagine no greater anomaly than a creditor prosecuting his claim—a legal claim —against a dead man's estate in the Orphans' Court, and saying, I might have brought my suit at law within six years, but did not, and it is now barred by the statute; I appeal to the equity powers of the Orphans' Court to breathe fresh life into my dead claim and condone my laches.

If the Statute of Limitations be necessary to protect the living from stale claims, how much more so is it to protect the estates of the dead? Much might be said, and with great force, upon this point, but I forbear. I will content myself with quoting the language of this court in Man *v.* Warner, supra: "In point of fact, every person experienced in business knows that more stale claims are brought against the estates of deceased persons than against debtors alive. Often these claims are suffered to sleep until all who could give evidence are removed to the far West, or to another world; and in not a few instances, I have known them to rest until the executors have settled their accounts and died, and an administrator *de bonis* raised up by the creditor for the express purpose of confessing a judgment."

McClintock's Appeal brushed aside a long line of authorities without so much as noticing them. It introduced a new rule which experience has shown to be erroneous and full of peril to the estates of the dead. That decision is but twenty-eight years old, and, as before observed, is not a rule of property. We now overrule it, and with it McCandless' Appeal, and other cases which have followed it; we restore the law as it stood before it was decided, and reinstate the Act of Assembly. We believe this course not only to be justified, but demanded for the public good, and the repose of dead men's estates.

The motion for a re-argument is denied.

Mercur, C. J., dissented.