Elwood's Estate.

Argued October 11, 1932.   Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

*Robert F. Barnett,* with him *James M. Graham, Sterrett, Acheson & Jones* and *Patterson, Crawford, Arensberg & Dunn,* for appellants.—There was no contract: Davies's Est., 289 Pa. 579; Swieczkowski v. Sypniewski, 294 Pa. 323.

The supposed declaration was no more than an expression of a then testamentary intention: Swieczkowski v. Sypniewski, 294 Pa. 323.

The terms of the alleged contract are not certain or definite: Gross's Est., 284 Pa. 73.

The statute of limitations began to run from the date of death of decedent: Bash v. Bash, 9 Pa. 260; Loughran's Est., 257 Pa. 534.

*Laurence C. Euwer,* for appellee.—The evidence was clear and satisfactory and supported the finding of a contract: Nusbaum's Est., 101 Pa. Superior Ct. 17; Cottrell's Est., 11 Phila. 93; Thompson v. Stevens, 71 Pa. 161; Harrington v. Hickman, 148 Pa. 401.

The statute did not begin to run until a proper administration was raised: Riner v. Riner, 166 Pa. 617.

The filing of an account tolled the statute and fixed the rights: Hillborn's Est., 5 Pa. Dist. R. 265; Ritchey's App., 8 Pa. Superior Ct. 527.

The heirs estopped themselves from pleading the statute: Felton's Est., 7 Pa. Dist. R. 262; Claghorn's Est., 181 Pa. 608; Daub's Est., 305 Pa. 446.

OPINION BY MR. JUSTICE SCHAFFER, November 28, 1932:

This is a claim for personal services rendered to a dead man, asserted against his estate, and alleged to be founded on an express contract between the claimant and the deceased. The auditing judge at first refused to award anything on the ground that no contract had been established. On rehearing, in the light of further testimony, he found that a contract had been entered into, but disallowed the claim for the reason that it was

barred by the statute of limitations. The orphans' court in banc, in which he sat, decided that there was a contract and that the statute had been tolled and accordingly allowed the claim. This appeal has been filed by one of the two sons of the deceased and by the representative of the other son.

The decedent, Robert D. Elwood, died December 28, 1921. He was then 86 years old. He left a considerable estate. His wife had died a few years previously at 82. The claimant, Lulu H. Carson, was a niece of the wife. When about ten years of age she went to live in the family of the deceased, then composed of himself, his wife and the two sons. This was about 1875. In 1910, because of changes which had occurred in the family due to the marriage of one of the sons who brought his wife to his father's house to live, the claimant left and went to the home of her parents. In October of the year named, according to the testimony of a sister of claimant given at the rehearing, a conversation took place between the deceased and claimant in which he said that if she would come back with him and his wife and take care of them and do well by them, he would remember her in his will so she would not have to work or worry about making a living. The witness said that claimant upon this offer agreed to go back. Claimant returned to the decedent's home and rendered services to him for the ensuing eleven years until his death. That she loyally served is not denied. Witnesses testified that decedent declared he had made ample provision for claimant in his will, that he had everything "shaped up," that she would not have to work for the rest of her life after his death, that he had provided for her future.

No will could be found after decedent's death, although it was shown that he had made one in 1910, and letters of administration were taken out by one of the sons on January 30, 1922. The record fails to disclose that these letters were advertised. Thereafter a codicil, signed May 16, 1912, turned up which recited a will

dated December 28, 1910. In this codicil the claimant was given $1,000. Following its probate, on August 8, 1922, the original letters of administration were revoked and letters c. t. a. were granted to the son who held the former letters. The administrator's account was filed April 27, 1928, and was audited February 19, 1930. On the latter date claimant presented her claim. No suit had been theretofore commenced. At the request of the two sons, claimant remained at the homestead of the decedent following his death and until the audit of the account in 1930. The sons made provision for her living there. They are the only heirs of the decedent and take his entire estate. Claimant is the only creditor. There was testimony by the son, who is the administrator, that the will, which had been executed by the decedent in December, 1910, contained a bequest of $4,000 for the claimant.

There are two questions to be considered: Whether an enforceable contract was proved and whether the statute of limitations operate to bar claimant from recovery.

The hearing judge and the court in banc found there was a contract. Our own reading of the evidence satisfies us that there was. This is not a case of voluntary services rendered in expectation of a legacy which was not given by decedent. Here it has been shown that the deceased undertook to compensate claimant for her services and that he made a will about the time the contract was entered into. Although the will cannot be found, the admission of one of his sons, who takes half of the estate, establishes that it contained a provision of $4,000 for claimant. The deceased continued to recognize his obligation to claimant for the services she was rendering him, as is shown by the codicil made two years after the will, in which he gave her an additional thousand dollars. As claimant is asking only the amount specified in the will, we need not determine the value of her services. She accepts the figure which the deceased himself fixed. Since the contract or agreement between the parties was

that the service rendered the decedent at his request should be compensated by a money legacy, which under the testimony has been made definite in amount, that sum may be recovered: Nusbaum's Est., 101 Pa. Superior Ct. 17; Miller's Est., 136 Pa. 239; Thompson v. Stevens, 71 Pa. 161. This is not a case of mere hope for, or of services rendered solely in expectation of, a legacy. On the contrary the claim is based on a definite, uncontradicted request on the part of the decedent for the services of the claimant and her acceptance and loyal performance of her duties under it. Such a contract is capable of enforcement since its terms are definite and clear, and established by direct and uncontroverted evidence: Calvert v. Eberly, 302 Pa. 152; Schleich's Est., 286 Pa. 578; Mack's Est., 278 Pa. 426.

Does the statute of limitations stand in the way of payment of the claim? The deceased died December 28, 1921. Claimant presented her claim on February 19, 1930, when the account of the administrator c. t. a. was called for audit. The original letters of administration were granted on January 30, 1922, on the oath of one of the sons that his father died intestate. They were revoked on August 8, 1922, and the letters c. t. a. were issued. As before stated, the first letters were not shown to have been advertised. The account of the administrator c. t. a. was filed April 27, 1928, more than six years after the first grant of letters, but less than six years after the issuing of the letters c. t. a. The court below determined that the date of granting the second letters was the starting point for the running of the statute. Under the circumstances, we are not prepared to say this was an erroneous conclusion. Generally speaking, the rights of creditors are to be determined as of the date of filing the account: Hillborn's Est., 5 Dist. R. 265, PENROSE, J. The filing of an account operates as an appropriation of the fund to the persons who are entitled to it, and their claims are thus seated: Ibid. While it is true that when a right become enforceable

at death, the statute of limitations will begin to run from the time an administration is raised and letters have been granted (Riner v. Riner, 166 Pa. 617), the filing of an account tolls the statute of limitations as to all claims not barred on the date the account was filed, even though the statutory period may have expired at the time of audit and distribution: Ritchey's Est., 8 Pa. Superior Ct. 527.

For another reason the statute of limitations cannot be set up against the claim. If the claim should be disallowed, the persons who would profit by it are the two sons of the decedent who take his estate. They are estopped by what they did from setting up the statute. Following their father's death, they kept claimant in the homestead and provided for her. They told her not to assert her claim and not to employ a lawyer, and indicated that they would take care of her. They importuned her not to press them or antagonize them. They promised her they would grant her more than their father did. They led her to believe that they would settle with her. One of them, who is a lawyer, informed her that they would not settle with anyone for six or seven years. The court below found that they allowed her to live in the home after her father's death until they believed the time for presenting her claim had expired and then refused to settle. Under these circumstances, the sons cannot be permitted to plead the statute: Daub's Est., 305 Pa. 446, 454.

The decree of the court below is affirmed.