## Brown Estate.

Argued March 9, 1943. Before KELLER, P. J., BALD-RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*W. H. Smallock,* of *Smallock & Mink,* for appellant.

*John Barbe Cupp,* of *Williamson & Cupp,* for appellees.

OPINION BY BALDRIGE, J., April 19, 1943:

The main question before us, which arose in the distribution of a fund in an executor's hands, is whether the statute of limitations constitutes a bar to the claim of liquidating trustees of the Lycoming Trust Company, holders of a promissory note.

The Susquehanna Trust Company was the holder of an unsealed promissory note dated October 30, 1927, payable three months after date, signed by Benjamin B. Brown and his brother Jacob C. Brown. On November 13, 1927, Benjamin B. Brown died, first having made his last will and testament wherein he devised and bequeathed all his estate to his brother Jacob, who was "to dispose of the same in accordance with our mutual understanding" and named his brother Jacob and the Susquehanna Trust Company as executors. Notice was given on December 14, 1927, by the commercial department of the trust company to its assistant trust officer of the existence of this note. The trust company as one of the executors filed with the Register of Wills of Lycoming County a sworn statement of the debts of the decedent which included an item as follows: "Susquehanna Trust Company, sundry notes, $8,000." This item, according to the testimony of Albert E. Eschenbach, assistant trust officer and secretary of the trust company who prepared the inventory of the assets of the estate of the decedent, filed December 14, 1927, included the note in question.

On January 31, 1929, about one year after the note was due and payable, the executors filed their first and partial account which showed undistributed assets in the accountant's hands of $7,772.77, consisting prin-

cipally of a mortgage and certain stocks. Exceptions were filed thereto on behalf of a creditor, but apparently no disposition was made thereof, nor does it appear that the account was confirmed absolutely. The executors filed their second and partial account carrying over the balance in their first account. It appears in this second account, which was confirmed absolutely on September 21, 1932, that there remained in the hands of the executors the sum of $5,498.40 for distribution. The third and final account was filed January 30, 1942, by the West Branch Bank and Trust Company, successor as executor to the Susquehanna Trust Company (which had been merged with the Lycoming Trust Company) one of the executors of Benjamin B. Brown in its own behalf, as Jacob C. Brown refused to cooperate with the trust company in the settlement of his brother's estate. The balance from the second account was carried forward and after making certain disbursements there remained in the accountant's hands $1,927.03. The auditor appointed to make a distribution of that sum awarded it, less the expense of the audit, on account of payment of the claim of the liquidating trustees of the Lycoming Trust Company, holder of the Brown note. Exceptions were filed by Lena Brown Mink, sister of the decedent, who by virtue of a "Declaration of Interest" executed by Jacob C. Brown, became the sole beneficiary of Benjamin B. Brown's Estate. The exceptions were overruled and this appeal followed.

As more than six years elapsed since the note was executed the statute of limitations, which was pleaded, would be an effective barrier to the payment of this claim unless the statute has been tolled.

Judge PENROSE, who was recognized as an outstanding authority in orphans' court practice, held in *Hillborn's Estate,* 5 Pa. Dis. Rep. 265, that the filing of an account in Pennsylvania has the effect, until the account is adjudicated, of a pending suit and that the

rights of creditors should be determined as of the date of the filing of the account, and that they "should not be prejudiced, so far as the fund which it embraces is concerned, by any delay in having it brought before the court for adjudication. A citation upon petition of a creditor, as we have recently decided (Heller's Estate, 5 District Reps. 205), arrests the running of the statute so far as his debt is concerned; but when an account has been filed it enures to the benefit of all creditors and further citation on the part of any of them would be useless." That case has been cited with approval in *In Re: Estate of A. Koonce, Balliett, Appellant,* 105 Pa. Superior Ct. 539, 161 A. 578, and in *Elwood's Estate,* 309 Pa. 505, 164 A. 617.

In *Estate of John Ritchey,* 8 Pa. Superior Ct. 527, a claim was presented before an auditor for services and commissions. The six year limitation had not run when the account was filed but it expired before the claim was presented at the audit. We there said that there could be no doubt that the filing of a petition in the orphans' court within six years, citing the executor to file an account, tolled the statute of limitations. The sole purpose of such a procedure is to compel the filing of an account. That same purpose is accomplished if the executor voluntarily files an account within six years of the creation of a creditor's claim. This court, speaking through Judge PORTER, there said p. 539: "The conclusion from which there can be no escape, is that the filing of the account by an executor in the orphans' court, whether under the compulsion of a citation sur petition, or by voluntary act, tolls the running of the statute as to the fund brought into court by the account in respect to claims presented before final adjudication. This decision is intended to reach no further and runs counter to none of the tenets of York's Appeal, 110 Pa. 69, and kindred cases." York's Appeal is one of the principal cases relied upon by the appellant.

In *Elwood's Estate,* supra, the court said, p. 509;

"The filing of an account operates as an appropriation of the fund to the persons who are entitled to it, and their claims are thus seated: ...... the filing of an account tolls the statute of limitations as to all claims not barred on the date the account was filed, even though the statutory period may have expired at the time of audit and distribution." *Ritchey's Estate,* supra, was cited in that opinion with approval.

In *Appeal of Charles S. Keyser,* 124 Pa. 80, 16 A. 577, cited by the appellant, the court held that the statute of limitations may be set up in the orphans' court and cannot be tolled by anything short of a suit at law or its "equivalent in the Orphans' Court." We have shown heretofore in the cases cited that the filing of an account in the orphans' court tolls the running of the statute and in that respect is therefore equivalent to a pending suit.

In *Gardner's Estate,* 228 Pa. 282, 77 A. 509, another case cited by the appellant, a holder of a certificate of deposit issued by a private banking company, presented his claim for payment to the auditor, appointed to distribute funds in the hands of the surviving personal representative of Gardner, a partner in a banking copartnership. Six accounts had been filed previously and a distribution had under each account. It was not until fifteen years after the time of the death of Gardner and the seventh account filed that notice was given and demand made for the payment of this claim. It is obvious that the facts in that case are not comparable with those before us. Neither that decision nor the others cited by the appellant rule the legal questions before us. Nor do we find anything in the Fiduciaries Act of June 7, 1917, P. L. 447, §§49(b) and 49(d), 20 PS §§862, 864, in conflict with the rulings in the cases to which we have referred.

Failure to prove a claim upon due notice of the audit of an account, where the audit is formal and an auditing judge or auditor is prepared to entertain

proof thereof, may act as a bar where distribution is made and the right of others might otherwise be prejudiced. But those facts do not exist here. The first opportunity that claimants had to prove their claim was in 1942. As stated by the auditor: "...... the claim based on this note became seated January 31, 1929, and, as has been indicated, should not be prejudiced by the fact that the audit did not take place until 1942. This is further borne out by the fact that each successive account carried on where the other had left off. In other words, the whole matter was of a continuing nature until the time of the audit."

In Lycoming County where there is no separate orphans' court, accounts may be confirmed without a formal audit if not excepted to. If exceptions are filed or if any person interested in the estate desires an account referred to an auditor, if the court determines the matter calls for a reference it may appoint an auditor. See, section 47(c) of the Fiduciaries Act, supra, 20 PS §842.

It follows from what we said heretofore the presumption of payment of this note never arose as argued by the appellant. That contention, therefore, requires no discussion.

A careful consideration of all the issues raised in the assignments of error fails to convince us that the learned court below erred in dismissing the exceptions to the auditor's report.

The decree of the court below is affirmed at appellant's costs.