## Byer Estate

Before KLEIN, P. J., BOLGER, LEFEVER, SAYLOR, SHOYER and BURKE, JJ.

*Harry Silver*, for exceptant.

*E. C. Shapley Highley*, contra.

SHOYER, J., June 30, 1967.—Is an executrix with personal knowledge of a creditor's claim estopped from pleading the statute of limitations where the six-year period for commencing suit terminated some 13 months after decedent's death and before presentation of the claim in writing?

The learned auditing judge held that "her protestations to the claimant that there were no assets in the estate", while not fraudulent, "lulled" claimant "into inaction". This tolled the running of the statute, he ruled. With this ruling we disagree.

Benjamin Byer, a member of the bar of this court, died February 12, 1959. His will, handwritten by another, was executed by the affixing of testator's mark on that very same day. Testator left his entire estate to his wife and named her executrix. The will was probated four days later, and executrix promptly advertised her appointment.

Jack M. Cohen, Esq., a former associate of testator, originally represented executrix, and she entrusted him with all the details of administration.

Executrix filed neither inventory nor account until cited by Dr. Sheinbaum, claimant, and ordered by the court to do so in August, 1966. Claimant rested his entire claim on a memorandum typed on the letterhead of Benjamin Byer, in manner following:

"December 2, 1953

"Received of Benjamin Byer the sum of Five Hundred ($500.00) Dollars, on account of the loan which I previously made to him. This leaves

a balance of Three Thousand ($3000.00) Dollars still due me from him as of this date.

"[signed] Albert Sheinbaum

"Affirmed as Correct:

"[signed] Benjamin Byer

"3/31/54   Paid 5000⁰ Dollars

"Balance 25000⁰ Dollars"

The notation following the signature of testator is entirely in the handwriting of claimant. The six years available for suit or other legal demand is calculated from his own "3/31/54". See section 613, Fiduciaries Act of April 18, 1949, P. L. 512, as amended, 20 PS §320.101 et seq. In answer to the citation, executrix pleaded laches and the statute of limitations, but later abandoned the former defense.

Judge Saylor, the hearing judge who ordered the filing of the account, subsequently sat as the auditing judge. The issue as defined in his adjudication was whether claimant's oral request for payment shortly after February of 1959 was sufficient to toll the statute of limitations.

The Fiduciaries Act sets forth in clear and unmistakable language just what a creditor must do to toll the running of the statute. Section 614 [1] provides:

"(a) Written Notice. *Written notice* of any claim against a decedent given to the personal representative or his attorney of record before the claim is barred shall *toll the statute of limitations*". (Italics supplied.)

In lieu of the written notice so clearly provided in section (a), section (b) expressly authorizes four alternatives:

"(b) Acts Equivalent to Written Notice. Any of the following acts by a claimant shall be equivalent

[1] All numbered sections cited in the opinion are references to the Fiduciaries Act of 1949 unless otherwise noted.

to the giving of written notice of a claim to the personal representative: . . ."

These four alternatives are: (1) instituting proceedings to compel the filing of an account; (2) starting suit against the personal representative; (3) substituting the personal representative in a pending suit; (4) receiving written acknowledgment of the claim.

Admittedly, claimant failed to comply with any of the statutory requirements specified in section 614 until after the expiration of the six-year period, on March 31, 1960, when the claim ordinarily would be barred by the statute of limitations.

Claimant testified that he contacted the widow with reference to his claim in February or March, 1959, shortly after her husband's death. He denied that she requested proof of the debt; she told him "that Mr. Byer had left her destitute, but, however, after she sold her home, as soon as she sold it she would be glad to reimburse me for the amount of money that Mr. Byer owed me".

That she was telling the truth at the time this statement was made is borne out by her formal account and contradicted by no one.[2] Decedent left cash of but $903.75. Accountant advanced to the estate the sum of $11,244.29 from a joint checking account in the

---

[2] At the hearing of Dr. Sheinbaum's petition to compel the filing of an account, claimant's attorney, Mr. Highley, identified and expressed his familiarity with litigation over two certain trust estates and stated: "The personal assets of Mr. Byer are reflected in that record". Mr. Highley did not successfully dispute the accuracy of the statement of assets in the account filed later in this case. Nor did he contradict the assertion by counsel for executrix that it would be difficult for her to state an account because "[W]e had to subpoena records from the Bar Association and to attach Ben Byer's records that were in the possession of Jack M. Cohen at one time, and we tried to get some information after that occasion, and this case is literally a mess".

names of Benjamin Byer and Sylvia Byer. Collection of additional assets and payment of claims was handled by accountant's attorney, Cohen. The latter was a friend of claimant, gave him information about the estate and voluntarily appeared as a witness on his behalf. At the same hearing, Cohen's hostility to the executrix whom he had formerly represented was obvious.

Claimant knew that Cohen was associated with decedent in the collection of certain escheat fees which did not commence coming into the estate until June of 1960. While Cohen may well have known of these assets in advance of their collection, there is not a particle of evidence that Mrs. Byer knew of them until long after claimant's debt was barred.

Since York's Appeal, 110 Pa. 69 (1885), there has never been any doubt that a personal representative in Pennsylvania is just as free to plead the statute of limitations as was his decedent. The court there said, page 80: "The relation which subsists between a creditor and the estate of his deceased debtor, is that of debtor and creditor, with a trust superadded, by means of which, and the machinery of the Orphans' Court, he can demand his proportion of the trust fund, *after his claim has been established.* When so established it may be said to be seated on the trust, and there is some room for the application of the principle of McClintock's Appeal. But in attempting to establish it the creditor is pursuing the estate of the decedent as his debtor; no other relation exists but that of *debtor and creditor,* and the Statute of Limitations may be set up in any forum which has jurisdiction of the case". (Italics supplied.)

A mere oral demand on executor will no more toll the statute than would a similar, or written, demand upon decedent in his lifetime, but a citation to account will stop the statute running, for it must be regarded

as the bringing of a suit in the orphans' court: Keyser's Appeal, 124 Pa. 80, 87 (1889).

Only after a creditor has complied with the statutory requirements of notice, as detailed in section 614, is the running of the statute interrupted as to him. Only then can the relationship between the parties acquire the status of trustee-beneficiary. Not until then can a claimant compel compliance by the executor with the mandate of section 701 that "every personal representative shall file an account of his administration at the expiration of six months from the first complete advertisement of the original grant of letters . . ." No penalty—not even a tolling of the statute—is imposed upon executor or the estate for failure to file on time. Nor will a citation to account granted on the petition of one creditor enure to the benefit of another. However, an actual filing by the personal representative will stop the running of the statute for the benefit of *all* creditors. This is case law in Pennsylvania and has been for more than 70 years. In Brown Estate, 152 Pa. Superior Ct. 252, 254 (1943), the court said: "Judge Penrose, who was recognized as an outstanding authority in orphans' court practice, held in Hillborn's Estate, 5 Pa. Dis. Rep. 265 [1896], that the filing of an account in Pennsylvania has the effect, until the account is adjudicated, of a pending suit and that the rights of creditors should be determined as of the date of the filing of the account, and that they 'should not be prejudiced, so far as the fund which it embraces is concerned, by any delay in having it brought before the court for adjudication. A citation upon petition of a creditor, as we have recently decided (Heller's Estate, 5 District Reps. 205), arrests the running of the statute so far as his debt is concerned; but when an account has been filed it enures to the benefit of all creditors and further citation on the part of any of them would be use-

less.' That case has been cited with approval in *In Re: Estate of A. Koonce, Balliett, Appellant*, 105 Pa. Superior Ct. 539, 161 A. 578, and in *Elwood's Estate*, 309 Pa. 505, 164 A. 617".

Miller v. Hawkins, 416 Pa. 180 (1964), relied on by claimant as a criterion of the duty of a personal representative, presented clear evidence of active fraud and concealment on the part of the fiduciary. The defrauded victims were minors. Executrix engineered a fraudulent sale of estate property to herself for approximately one tenth of its true value. The court described her self-dealing as "flagrant", "of the rankest sort" and "a more sordid example of a fiduciary's self-dealing . . . can hardly be envisaged!" Section 732, which offers protection to a personal representative who has duly advertised and waited one year before distributing the decedent's property, was there held unavailable to an executor who had acknowledged the existence of the claim by substituting his appearance in a pending suit. No question of the statute of limitations was raised, nor could there be, because there had been full compliance with section 614(b)(3). The same counsel who had represented the deceased executrix continued to represent her executor.

Were claimant relying on a promise by Byer to remove the bar, and we do not understand that he is, a clear and unequivocal acknowledgment, coupled with a definite promise to pay, would be necessary: Harbaugh's Estate, 320 Pa. 209, 212 (1936) ; Hartranft's Estate, 153 Pa. 530 (1893). For reasons convincingly stated by Chief Justice Gibson in Fritz v. Thomas, 1 Wharton 65 (1836), a promise by a personal representative is insufficient; although if made by the debtor personally, it would suffice: Steel v. Steel, 12 Pa. 64 (1849).

Despite the excuse offered by claimant that he was

"lulled into inaction", we have Dr. Sheinbaum's admission on crossexamination that he did not believe the statement of executrix that she was "destitute". In Thorne's Estate, 344 Pa. 503 (1942), an heir seeking review of a duly confirmed account after five years could not avoid the bar of the statute (there, section 48 of the Fiduciaries Act of June 7, 1917, P. L. 447, 20 PS §843; here, section 721) when he was unable to prove "active fraud" on the part of executor. The court held that the action of executor in selling the collateral of a past due note did not constitute fraud, even though the indebted heir had been lulled into the belief that he would be given ample opportunity to pay off the loan. Such a situation we believe to be fairly analogous to the present. Our Supreme Court there said, pages 511-12: "The essence of fraud is deceit intentionally and successfully practiced to induce another to part with property or with some legal right. Fraud is practiced when deception of another to his damage is brought about by a misrepresentation of fact or by silence when good faith required expression. . . . No one is deceived by a declaration he disbelieves. . . .

". . . 'If the representee knew the truth it is obvious that he was neither deceived nor defrauded and that any loss he may sustain is not traceable to the representation but is in effect self-inflicted.': 26 C. J. p. 1135-6, section 55".

This record is totally barren of any effort by claimant to put his demand in writing, or of any act or word on the part of executrix that would excuse him from compliance with the statutory requirements of section 614. Just as there was no fraud by Thorne's creditor in the above case in failing to allow the additional time for payment of the past due note as he had *allegedly promised*, so here there can be no fraud in pleading the statute of limitations which, admittedly,

had *never* been made the subject of *any promise.* In Thorne, there was a fiduciary relationship; here, none has been established.

It is a cardinal rule that claims against a decedent's estate must be proven by evidence that is clear, direct, precise and convincing: Petruzzi Estate, 410 Pa. 554 (1963). This high standard must be met in the quality of proof required as to (1) creation of the debt and (2) its nonpayment in decedent's lifetime. Here, claimant, testifying in 1966, could not recall the original amount of the debt, its date, nor any of the circumstances surrounding its creation. Claimant could not recall any payments made to him by Byer after 1954, at least on this claim. There were, however, various business investments with Byer, whom he had known over 50 years. But he had no records, and his testimony as to what payments he may have received was vague and unsatisfactory. This evidence does not meet the standard of proof required to impose an obligation on one whose lips are sealed immutably by death.

The alleged admission by Byer that "when I get out of the hospital I will take care of it in my own way" does nothing to bolster Dr. Sheinbaum's claim, because it was just as vague and indefinite as the rest of claimant's testimony. In Harbold's Executors v. Kuntz, 16 Pa. 210, 214 (1851), our Supreme Court held an admission too vague and uncertain to remove the bar of the statute and said that this is "the easiest mode of testimony to lead to error, the kind of evidence most apt to be misapprehended and mistaken, and in relation to which a facile conscience may stretch itself like India rubber".

We are not convinced that executrix knew anything about this claim in her husband's lifetime. Admittedly, no evidence of the debt was furnished her before the six years had run. The statute of limitations is avail-

able to her as a defense, and she has properly pleaded the bar.

For the reasons set forth above, we sustain exceptions numbered two and nine. The result is to disallow the award of $2,500 with interest to Albert Sheinbaum, as made in the adjudication of March 15, 1967, and we hereby dismiss his claim. We deem it unnecessary to pass on the other exceptions, which are dismissed without prejudice.

Saylor, J., concurs in the result.