## Harbold's Executors *versus* Kuntz.

1. To take a case out of the statute of limitations, the acknowledgment must be clear and unequivocal; and it ought to be so distinct in its *extent* and form as to leave no room for doubt or hesitation.

2. In a claim by a son-in-law who had lived on the farm of his father-in-law, for ten years' service, and for rents of a house of plaintiff, received by defendant, testimony that defendant (the father-in-law) said to the witness that "he had never settled with the plaintiff, nor paid him for the ten years' service, and he did not know what he would charge him; that he owed him for his ten years' service; that he had never paid him, and that he could pay him and would pay him; that he had not settled with him for the rent of the house and lot; that he would settle with him and pay him all he owed him, that he was old and wanted to settle up for the ten years' service and the rent; that he had paid debts for him (the plaintiff) and hauled stone for him:" was held to be too vague and uncertain to remove the bar of the statute.

ERROR to the Common Pleas of *Adams county*.

This was an action on the case, brought by John Kuntz against Michael Harbold. The executors of Harbold were substituted, after his death. The suit was brought January 17, 1849. In the declaration, the plaintiff claimed to recover for services of himself, his wife Susanna, and minor children, Michael, Elizabeth, and Sarah, alleged to have been rendered to defendants' testator from 1831 to 1841; and also certain rents, accruing during said period, from a house and lot claimed as plaintiff's, and which he alleged defendants' testator rented out and received the rents, as agent for plaintiff.

Defendants contended that the plaintiff never rendered services to their testator, as hireling, either by himself, his wife, or children; that their testator had taken the plaintiff (his son-in-law) and family into his family, when in poverty, and from considerations of affection and charity, and had supported them in his family and upon his farm, and had paid debts for plaintiff—that no wages were to be paid for any service done by them—and that the decedent had not received rents for the use of plaintiff; and, further, that if there had been any indebtedness by defendant to plaintiff, for services or rents, the same was satisfied and paid—and, further, the defendants interposed the bar of the statute against all claims by plaintiff for alleged services of plaintiff, his wife and family, and for rents.

The declaration contained a number of counts, and the pleas were *non assumpsit*, and *non assumpsit infra sex annos*, and payment.

On the trial, Samuel Blake was examined on the part of the plaintiff. A part of his testimony, which was considered by his Honor DURKEE, J., to be material as to the bar of the statute, was as follows:—Blake said in conclusion, Kuntz was not

[Harbold's·Executors *v.* Kuntz.]

present when the old man said he would pay him ; nobody but my-self, that I recollect.   He told me about paying debts for him, and that he had hauled stone for him.   Kuntz worked out at carpen-tering, in the ten years, for Simpson and Baker.   I communica-ted to Kuntz what the old man said to me about paying him, that same evening.

Testimony was given as to the value of the services rèndered.

DURKEE, J., charged, in part, as follows:—On the 17th of Jan-uary 1849, this suit was instituted by John Kuntz against Michael Harbold, who was his father-in-law.   Shortly after the suit was brought, Michael Harbold died, and the present defendants, Jacob George and George Brown, his executors, having been substituted in his place, make defence to the action.

The plaintiff seeks to recover compensation for work and labor done and performed by him for Michael Harbold, in his lifetime. He alleges, that with his family he moved on to the farm of Michael Harbold, at his request, in the spring of 1831, and that he re-mained there, working and laboring for him, until the spring of 1841—a period of ten years—for which work and· labor he had never been paid.   And, further, that Michael Harbold for a num-ber of years received the rents of a house and lot belonging to him, (the plaintiff,) and which he ought to have paid over to him,. but did not.

The defendants deny that the plaintiff ever worked and labored, as he alleges, for Michael Harbold at his request, or, if he did so work and labor for him, they contend that it·was done with an un-derstanding between.the parties that he was not to be paid for it ; or, if he was to be paid for it, they contend that he has been paid and satisfied for it.   And, lastly, that if he has any claim for such work and labor, it is barred by the statute of limitations, the suit not having been brought within six years from the time the services were performed.

They also deny the receipt by Michael Harbold of·any rents belonging to the plaintiff.   If any were so received, they contend that they were paid over to him or accounted for ; and, at all events, that he is barred by the statute of limitations from re-covering any thing for them in this suit..   *   *   *

The latest period at which it is pretended that the plaintiff per-formed any services for Michael Harbold was the spring of 1841. His suit was commenced, as I have already stated, on the 17th of January, 1849, more than six years·after all the alleged services had been performed.   More than six years having elapsed, then, after the services were rendered, before the suit was brought, the plaintiff's claim for those services is cut off and barred by the statute of limitations,.unless there is proof in the case that Michael Harbold said·or did something in his lifetime that rescues it from the statute, or takes the case out of the statute.   If. there is any

such proof, it is to be found alone in the testimony of Samuel Blake, Esq. If you believe his testimony to be true, then the plaintiff's claim is unaffected by the statute—is no more barred by it than though all the services had been rendered within six years before the suit was brought. If you disbelieve it, the plaintiff cannot recover for services, and ought not, for the statute of limitations is a wholesome act, and should not be violated, even though it should, in the opinion of the jury, work the grossest injustice. Esquire Blake testifies in regard to the point under consideration as follows. Speaking of the house in which both parties resided, he says :—" I went to the house the last of March 1843, and remained there as a boarder, until the spring of 1848, boarding part of the time with Kuntz, and part of the time with the old man. The old man detailed to me about bringing Kuntz and his family from York county, to work on his farm, from 1831 to 1841 ; he said he was $2000 in debt for the farm ; that Kuntz was a great worker, and he brought him along to work on the farm ; that Kuntz had a house and lot in Washington township, York county, and that he (Kuntz) told him (Harbold) that he should rent it out and pay his (Kuntz's) little debts. He said he had never settled nor paid him for the ten years' service, and he did not know what he would charge him. He told me, in 1847, that he owed Kuntz for his ten years' service ; that he had never paid him, and that he could pay him and would pay him. On the same day, he said he had not settled with him for the rent of the house and lot ; that he would settle with him and pay him all he owed him ; that he was old, and wanted to settle up for the ten years' service and the rent. He told me that after the ten years he gave Kuntz the place on rent for the third bushel ; Kuntz to get the third bushel. I had a settlement with the old man in February 1847, and his settlement with Kuntz was repeatedly brought up by him that day."

Verdict was rendered for plaintiff for $1401.91.

Various errors were assigned : one was to the charge, that the testimony of Samuel Blake was sufficient to take the case out of the statute.

*D. McConaughy* and *M. McClean*, for plaintiffs in error, contended that the testimony of Blake was not sufficient to take the case out of the statute : 6 *Watts* 219 ; 10 *id.* 172–9 ; 7 *W. & Ser.* 180 ; 3 *Barr* 418 ; 4 *id.* 321–4 ; 1 *Jones* 365. In this case there is no admission of *a clear balance :* 1 *Peters* 351, Bell *v.* Morrison.

*D. M. Smyser* and *R. J. Fisher,* in reply.—The claim was a *quantum meruit* for an amount unliquidated, not only at the time

[Harbold's Executors *v.* Kuntz.]

of the acknowledgment, but from and during all the time of the continuance of the implied contract between the parties. The acknowledgment went to the *entire* claim—the *whole claim* for ten year's services. It acknowledged an indebtedness coextensive with any that ever existed, before the statute began to run. In the very nature of the case, it could name no sum or amount.

But the *acknowledgment* was accompanied by an *express promise to pay*. This *promise*, if the testimony of the witness is true, was as extensive as the acknowledgment, and went, like it, to the full extent·of the original demand. There is, it is true, no admission of a clear balance. There could be none, as there never had been any thing between the parties by which the amount of the balance was known to either, but an undertaking to pay whatever the services were worth. If, one day before the statute interposed, the defendant would have been liable to pay the value of the services, to be liquidated by a jury in case of disagreement between the parties, we say that the declaration of Harbold, in 1847, " that he owed Kuntz for his ten years' services; that he had never paid him, and that he could pay him, and would pay him," restored that liability to where the statute found it. Such a declaration, made within six years, with proof of previous service, would have made out a good case for the plaintiff. Why should it not be sufficient to reinstate his case.

The opinion of the court was delivered May 26, by

COULTER, J.—In order to take a case out of the statute, the acknowledgment of the debt must be clear and unequivocal, otherwise it is not equivalent to a promise to pay; and it ought to be so distinct in its extent and form as to leave no room for doubt or hesitation : Farley *v.* Kustenbader, 3 *Barr* 418; Berghaus *v.* Calhoun, 6 *Watts* 220 ; Magee *v.* Magee, 10 *Watts* 172; Hazlebacker *v.* Reeves, 9 *Barr* 258 ; Gilkyson *v.* Larue, 6 *W. & Ser.* 213. The extent of the promise, whatever may be said on that subject, is as important as any other of the ingredients. And this is strongly manifested in Farley *v.* Kustenbader.

The old debt is gone. It is the new promise which is efficacious and creates the liability, and which supports the action. But how can that be, if you don't know its extent, either by positive admission, or by reference to something admitted which makes it certain. The law delights not in shadows and uncertainties, but in distinct proof, on which the mind can rest with certainty in establishing a liability. To say that I will settle with you, and pay you what I owe you, and all such forms of admission, are wholly uncertain, because you cannot tell what was in the mind of the person; he perhaps thought nothing was due. The case on hand is strongly evincive of the value of the statute, and the danger of making it of no effect by loose testimony.

[Harbold's Executors *v.* Kuntz.]

The alleged promisor was dead at the time of trial. The claim is for alleged services by Kuntz, his wife Susan, and his minor children. The services are alleged to have been rendered between 1831 and 1841, during which time it is also averred that Harbold received the rent of a house belonging to Kuntz. The suit was not instituted till 1849. The court say that the testimony of Samuel Blake, if believed, removes the bar of the statute. But Blake's testimony, thus thrown before the jury in a lump, is altogether too vague and ill-defined. We cannot ascertain whether it was one conversation, two, three, or more.

It is uncertain whether he meant that he had not settled and paid for the ten years' service of Kuntz himself, or for himself and family. It is uncertain whether, when he said he would settle and pay all he owed him, he referred to the rent merely, or to the whole claim. He afterwards said that he wanted to settle up for the ten years' service (but of whom he did not say) and the rent, and he would pay all he owed him. He also said he did not know how much Kuntz would charge him. Now there is nothing certain in this. All the while Kuntz was living on the farm of Harbold, and must have been furnished, I should suppose, with much material for clothing and subsistence. But the witness testifies that his services were worth $150 per year. Here is a claim and a recovery to the amount of $1401, for alleged services, the last of which were rendered eight years before suit brought, and all depending upon the misty recollection of one witness, who testifies merely as to admissions, the easiest mode of testimony to lead to error, the kind of evidence most apt to be misapprehended and mistaken, and in relation to which a facile conscience may stretch itself like India rubber. At the close of his testimony, he says that Harbold told him he had paid debts for Kuntz and hauled stone. We may suppose also that he had a claim against Kuntz for occupying his premises. What then was the balance on settlement—how much, what sum was in the mind of Harbold when he said he would settle and pay what he owed ? Was it a hundred dollars, or was it two thousand ? The evidence gives no data, acknowledged and stated by Harbold, from which it can be fixed with certainty.

The direction of the court is too general in throwing the vague and uncertain testimony of Blake before the jury as removing the bar of the statute.

Judgment reversed and a *venire de novo* awarded.