Statement of Facts.

## J. A. LINDERMAN v. ELEAZER POMEROY.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF BRADFORD COUNTY.

Argued March 16, 1891—Decided May 4, 1891.

(*a*) The plaintiff, claiming over-payment on a debt,— the recovery of the
over-payment being barred by the statute, — testified that, within six
years of suit brought, he told the defendant he proposed to have an ac-
count stated by one Hoffman, when the defendant replied he would as
lief Hoffman would do it as any one.

(*b*) He testified that he said to defendant also : " If Hoffman does this, if
I owe you anything I will pay you ; and if you owe me anything you
will pay me ; " to which the defendant replied : " Yes, sir ; if you owe
me anything you must pay me, and if I owe you I will pay you : "

1. The plaintiff's testimony was insufficient to be considered as evidence
of a submission to arbitration, or of a compromise of disputed rights.
Moreover, the promise of the defendant, being conditional and indefi-
nite, was unavailing as an acknowledgment of indebtedness sufficient
to toll the bar of the statute.

2. The practice, on the argument of a rule for a new trial, of entering
judgment against the judge's own view of the law, and putting addi-
tional labor upon the Supreme Court, for the mere purpose of saving
expense to a litigant, disapproved : Per Mr. Justice MITCHELL.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, MC-
COLLUM and MITCHELL, JJ.

No. 218 July Term 1890, Sup. Ct.; court below, No. 286
September Term 1886, C. P.

On June 8, 1886, Jacob A. Linderman brought assump-
sit against Eleazer Pomeroy. The defendant pleaded non-
assumpsit, payment, and the statute of limitations.

At the second trial of the case, on April 3, 1890, the facts
made to appear were briefly as follows:

In 1857, Linderman gave to Pomeroy his judgment note for
$6,383.29, the purchase money of a farm, payable in instal-
ments. On May 4, 1857, judgment was entered on the note
to No. 11 September Term 1857. Prior to April 8, 1862, four-
teen different payments were made by Linderman, and on the
date last mentioned the judgment was revived for $3,484.40,

at No. 728 May Term 1862. It was alleged that the revival in said amount was agreed to with the understanding that the actual amount due was to be adjusted subsequently. On October 21, 1865, Linderman had made eight additional payments, which, with the last one made the date stated, was $906.61 in excess, as was claimed on the trial, of the amount really due Pomeroy. In August, 1871, however, Pomeroy called on Linderman and had him give a judgment note for $895.32, Pomeroy claiming that amount to be a balance due on said judgment note, and Linderman remonstrating that the amount stated could not be correct. On this note judgment was entered to No. 908 September Term 1872. That judgment was revived by amicable scire facias in 1877, and again in February, 1880, for $1,425.25, at No. 146 May Term 1880. On the trial, it was claimed by Linderman, upon the testimony sufficiently appearing in the opinion of the court below, that in 1883 a submission of the dispute to an accountant was entered into, and a promise to pay made by the defendant sufficient to toll the bar of the statute.

At the close of the testimony, the court, SEELY, P. J., submitted to the jury the questions of fact in dispute, and answered the points for instruction presented by the defendant as follows:

The defendant's counsel have submitted certain points in writing, asking us to instruct you as follows:

1. The agreement set up and shown by the plaintiff, in this case, is not an agreement for a reference of matters of difference between the plaintiff and the defendant to Frederick Hoffman, as a common-law reference.

2. If said agreement be sufficient to constitute a reference of the differences between the plaintiff and the defendant, the testimony of the plaintiff does not disclose that there has been a hearing of the parties before said referee, nor does the evidence disclose that there has been an award made and rendered by the referee.

3. If there has been a hearing before the referee, and an award has been rendered by the referee, then the plaintiff's evidence discloses that the award was procured under the direction of the plaintiff as to producing statements of judgments and re-

ceipts before the referee for investigation, and the plaintiff did not deliver to said referee the statement of all the judgments contained in said agreement; also, by directing interest on advance payments and on balance after last payment on judgment of E. Pomeroy v. J. A. Linderman, No. 728 May Term 1862, Bradford Common Pleas, which is unlawful and in violation of said agreement, and therefore said award is void.

Answer: We answer these three points by saying that they are immaterial in this case. For, we have already decided that under the bill of particulars filed in this case, the plaintiff's action is not based upon a common-law award, and it is immaterial whether the agreement between the parties amounts to a common-law submission, and the paper filed by Mr. Hoffman amounts to a common-law award, or not. The only question arising out of this agreement is whether the defendant has waived the protection of the statute of limitations.

5. If the jury believe, under the evidence in this case, that there was an agreement between the plaintiff and defendant that Frederick Hoffman should compute and calculate the amount due on judgment No. 728 May Term 1862, and papers connected therewith, then there can be no recovery upon such computation, because it shows on its face a wrongful calculation of interest, by charging interest on advance payments and computing interest on balance after last payment made, and for the further reason that judgment No. 146 May Term 1880, E. Pomeroy v. J. A. Linderman, is not included in that calculation.

Answer: We decline that point, because it involves matters that we have already submitted to you. But, in declining it, we express no opinion with reference to the facts stated in this point, but simply say that it contains matters that the court cannot pass upon in this case. We may say, further, that although they agreed to accept Mr. Hoffman's computation as the basis of payment, we do not think that if errors appear in the computation, that that fact is fatal to the agreement. We think that the errors may be corrected if they made that agreement.[1]

6. That if the jury believe, under all the evidence in this case, that there was no agreement that Frederick Hoffman should compute the indebtedness between the parties, then

there can be no recovery by the plaintiff in this case, whatever may be the condition of the accounts and balance between them.

Answer: That is true and we affirm it, if there was no agreement between the parties that Mr. Hoffman should compute and ascertain the amount. This point means, as we understand it, to call attention to the distinction between a submission of these papers to Mr. Hoffman by Mr. Linderman for his own purpose, with the simple consent of Mr. Pomeroy, in the manner in which he testifies that he gave that consent; that that would not be an agreement by these parties adopting Mr. Hoffman as an accountant for the two. If the facts are as stated by Mr. Pomeroy, then Mr. Hoffman was Mr. Linderman's accountant and not Mr. Pomeroy's.

7. That there is no evidence in this case which removes the bar of the statute of limitations.

Answer: We refuse this point. We have already instructed you that you must determine this fact.[2]

—The jury returned a verdict for the plaintiff for $1,287.66.

A rule for a new trial having been argued, the court, SEELY, P. J., filed the following opinion:

In disposing of this rule, it is only necessary to consider whether the court erred in refusing the defendant's seventh request, which was to charge "that there is no evidence in this case which removes the bar of the statute of limitations."

The plaintiff's action was brought to recover for alleged overpayment to the defendant upon a certain judgment. The last of plaintiff's payments upon the judgment was made October 21, 1865. This action was commenced June 8, 1886, nearly twenty-one years later, and the statute of limitations is pleaded.

To sustain his right to recover, the plaintiff alleged an agreement between himself and the defendant in the winter of 1883, between seventeen and eighteen years after the right of action accrued. The issue with reference to the payments themselves was clearly for the jury, and does not call for present remark.

The plaintiff testified to an alleged conversation with the defendant by which he asserts the bar of the statute of limitations was tolled. The defendant denied every portion of the conversation which could be considered material for that pur-

pose. The testimony of Mr. Hoffman, so far as it affects this question, is equally consistent with that of the plaintiff and of the defendant. The credibility of the witnesses and the correctness of their recollection was for the jury; so that, in considering this rule, the single inquiry is, taking the plaintiff's testimony by itself, does it present sufficient ground to justify the jury in finding that the defendant waived the benefit of the statute?

The plaintiff's testimony, that "after quite a long time we agreed on Mr. Hoffman to figure it, and comply with his figures," is evidently not intended as a statement of what was actually said between the parties, but simply of the plaintiff's interpretation of their agreement, and may be dismissed from consideration.

Afterward, the plaintiff undertakes to give the conversation in part: "I said to him, 'If Mr. Hoffman figures this—if I owe you anything,'—he claimed that I owed him $100, or so—'I will pay you, and if I have overpaid you, you must pay me,' and he said, 'All right,' and he told me 'to take the papers to Mr. Hoffman and have it figured,' and I done so." The witness was afterward asked by the plaintiff: "Give the words that were used by Mr. Pomeroy and you in this agreement," and in reply he gave a more full statement of the conversation, as follows: "As I said before, we had some little talk about it, and he insisted that he knew it was right, and it was not necessary to figure it; and finally I spoke of several, or I told him to pick his man, and he didn't do it, and finally I said to him that I had thought of Charles Paine and Frederick Hoffman, and told him that I was going to have it done, and, 'Well,' he said, 'if anybody had got to do it, he would as lief Frederick Hoffman would do it as any one.' Q. You said you was going to have it done any way? A. Yes sir. Q. And he said he would rather have Frederick Hoffman? A. Yes sir. He said he would as lief Frederick Hoffman would do it as any one. And I then asked him, I said, 'If Frederick Hoffman does this, if I owe you anything I will pay you, and if you owe me anything you will pay me.' 'Yes sir,' said he, 'If you owe me anything you must pay me, and if I owe you I will pay you.' Q. State that again? A. After we had agreed to let Frederick Hoffman figure it, I said to him: 'If I owe you, I will pay you, and

if you owe me, you will pay me;' and said he, 'Yes, if you owe me, you must pay me, and if I owe you, I will pay you.'"

The work which Mr. Hoffman was to do was simply from the papers to make a computation. No question of fact or dispute as to any payment was referred to Mr. Hoffman, nor was it contemplated that any time should be fixed for a hearing, or that the parties should meet before Mr. Hoffman.

Upon cross-examination, the plaintiff testified as follows: "Q. He claimed $100, or thereabouts, was his due? A. Yes sir. . . . . Why, I went there to try to figure, and he wouldn't do it. Q. He wouldn't do it? A. No. Q. Pomeroy didn't figure? A. No, he would not. He said he knew it was right, and as much as to say it didn't make any difference whether I did or not. Q. State what was said. A. Why, he wouldn't settle it, or consent to let any other men settle it or figure it up until we came to Mr. Hoffman, and when he found I was determined to have it figured, then he consented to let Mr. Hoffman figure it. Q. You told him you were going to have it figured any way? A. Yes sir."

Now, it will be noticed from the plaintiff's testimony that Mr. Pomeroy did not acknowledge any indebtedness to Mr. Linderman, but on the contrary claimed that Linderman owed him; that Mr. Pomeroy at first refused to consent to having the matter computed, asserting that he knew it was right; and only when Mr. Linderman asserted that he was going to have it done any way, did Mr. Pomeroy say, "If anybody had got to do it, he would as lief Frederick Hoffman would do it as any one."

It will not be contended that a promise to pay "whatever I owe," or, "if I owe anything," would toll the bar of the statute. The general rule is that the evidence must show a clear, distinct and unequivocal acknowledgment of a debt, clearly identified, and the amount of which is specified, or the means of definitely and certainly ascertaining it recognized, with a promise to pay, or at least such declaration as is consistent with a promise to pay: Weaver v. Weaver, 54 Pa. 152; Burr v. Burr, 26 Pa. 284; Miller v. Baschore, 83 Pa. 356; Landis v. Roth, 109 Pa. 621; Macrum v. Marshall, 129 Pa. 506. In Kensington Bank v. Patton, 14 Pa. 481, it was said, ROGERS, J.: "Expressions equivocal, vague and indeterminate, will not suffice. The

statute was designed to guard against persons being entrapped in careless conversations, and betrayed by perjuries. The promise to pay must not be vague, shadowy and uncertain; it must be plain, unambiguous and express, and such as to preclude hesitation and doubt." "It must be so distinct and unambiguous as to remove hesitation in regard to the debtor's meaning:" Palmer v. Gillespie, 95 Pa. 344. And in Johns v. Lantz, 63 Pa. 326; and Shaeffer v. Hoffman, 113 Pa. 5: "The decisions of this court apply very strict rules to acknowledgments to take a case out of the statute of limitations, and very rightly so. We mean to adhere to them in letter and spirit."

Taking Mr. Linderman's testimony alone, can we say without hesitation or doubt, that Mr. Pomeroy intended to recognize the result of Mr. Hoffman's computation as binding upon him, and in saying "If I owe you any thing I will pay it," under the circumstances and in the connection testified by the plaintiff, is it clear that he intended that if Mr. Hoffman's computation should show a balance against him he would pay the balance so shown?

I find nothing in the conversations or declarations made after the alleged agreement, which can assist in sustaining or interpreting that agreement. Plaintiff testifies that when he handed the statement of Mr. Hoffman's computation to the defendant, the defendant wanted the paper left with him; that subsequently he went down to see if he had looked it over, and Mr. Pomeroy said he had and that Mr. Hoffman's figuring was all right, and that the way the mistake came to be made was that plaintiff had left two of the receipts at home. We understand the witness to mean that when Mr. Pomeroy computed, the absence of two receipts led him into an error. Mr. Pomeroy did not say then that the balance ascertained by Mr. Hoffman was correct, nor promise to pay it, but simply that the figuring was all right. This conversation is said to have occurred "a few days after the paper was left with Mr. Pomeroy." The plaintiff testifies, also, that some time afterward, possibly on the same day, on the stairs leading to Mr. Fanning's office, "the defendant said he would pay me, or it amounted to the same thing, he would pay me what he owed me." But the plaintiff also testified: "Q. When did Mr. Pomeroy notify you or claim to you that this receipt of April 8, 1862, was given for a note?

A. At the time, after leaving the paper that Mr. Hoffman figured upon; after Mr. Hoffman figured this up and left that paper with him, then I went down after that, and he told me that one of those receipts was given for a note. Q. This was after the figuring was made known to him? A. Yes, sir. Q. How long after that was it? A. Why, it was only a short time after the figuring had been done."

This receipt of April 8, 1862, and whether it represented an actual payment in money or simply the giving of another obligation, presents the whole contention between the parties as to the account, and the ground upon which the defendant denies the correctness of the result reached by Mr. Hoffman and claims that a balance is due from the plaintiff to him. Mr. Hoffman, plaintiff's witness, testifies that Mr. Pomeroy promptly asserted the incorrectness of the result reached by his computation, when that result was communicated. Mr. Pomeroy testifies to the same thing. This concurrence of testimony renders it at least very improbable that Mr. Pomeroy ever intended to admit the correctness of the result reached by Mr. Hoffman, conceding that he said to Mr. Linderman "the figuring is all right." Nothing in all this evidence assists in establishing a waiver of the benefit of the statute of limitations. Such a waiver must be found if at all from the plaintiff's direct statement of the alleged agreement before the computation was made.

At the trial, when we were compelled to rely upon our recollection of the evidence as it was given by the witnesses, except as to a small portion which we caused to be transcribed, we submitted the question of waiver of the statute to the jury, with a good deal of hesitation, reserving our doubts in favor of such a submission. The examination of the evidence as transcribed does not make it clear to our mind that we were right in so submitting the case.

This case has now been tried twice, at considerable expense and inconvenience to the parties. Whether the court should have given binding instructions to the jury to find for the defendant because the plaintiff's claim is barred by the statute, is a question which must ultimately be answered by the Supreme Court. Whatever might be the ruling of the trial court, one of the parties will insist upon a review of that ruling. The

record contains probably all the evidence which could be obtained to give light upon that question, and the case so stands that it can be affirmed, or reversed without a new venire; for if the case ought not to have been submitted, no occasion for another trial exists. Under the circumstances, it has seemed to us wise, without asserting or denying the correctness of the ruling at the trial, to discharge this rule, in order that the matter may be finally determined with the least expense and loss of time. And we have written this opinion simply to present the facts, as after careful examination of the evidence they appear to us, hoping in some degree to relieve the labor of the court of review.

The question of common-law submission and award, need cause no confusion. If the evidence sufficiently shows such a submission, it would certainly be a sufficient waiver of the statute: See Shreiner v. Cummins, 63 Pa. 374. If it does not show such a submission, the question is of no consequence.

Now, July 10, 1890, the rule for a new trial is discharged.

—Judgment having been entered, the defendant took this appeal, assigning for error:

1, 2. The answers to the defendant's points.[1 2]

*Mr. William T. Davies* and *Mr. H. N. Williams* (with them *Mr. L. M. Hall*, *Mr. E. B. Parsons*, and *Mr. Albert Morgan*), for the appellant.

That the finding of Hoffman was an award having the effect of a verdict, counsel cited: Post v. Sweet, 8 S. & R. 390; Sturgis v. Rue, 3 Clark 499; McCracken v. Clarke, 31 Pa. 498; Shaw v. Atkinson, 3 Y. 48; Govett v. Reed, 4 Y. 460; Pringle v. McClenachan, 1 Dall. 506. That the bar of the statute was not tolled: Kensington Bank v. Patton, 14 Pa. 479; Morgan v. Walton, 4 Pa. 321; Burr v. Burr, 26 Pa. 284; Miller v. Baschore, 83 Pa. 356; Landis v. Roth, 109 Pa. 621.

*Mr. Delos Rockwell* (with him *Mr. J. T. McCollom* and *Mr. A. C. Fanning*), for the appellee.

As to the statute, counsel cited: Johns v. Lantz, 63 Pa. 324; Palmer v. Gillespie, 95 Pa. 340; Wesner v. Stein, 97 Pa. 322; Weaver v. Craighead, 104 Pa. 288; Shaffer v. Clark, 90 Pa. 94; 2 Phillips on Ev. Am. ed., 140; Shreiner v. Cum-

mins, 63 Pa. 374; Fries v. Boisselet, 9 S. & R. 131; Henwood v. Cheeseman, 3 S. & R. 500; Lawson v. McCartney, 104 Pa. 359.

OPINION, MR. JUSTICE MITCHELL:

We gather from the opinion of the learned judge below, on the motion for a new trial, that his matured view was that there was no sufficient evidence to toll the bar of the statute, and that the jury should have been directed to find for the defendant. He, however, allowed the verdict to stand, on the ground that the case, whichever way decided, would probably come to this court for final determination, and that if the judgment he entered was wrong we could set it right without the expense of another trial. We can hardly commend the practice of entering judgment against the judge's own view of the law, and putting the additional labor upon us, for the mere purpose of saving the plaintiff's pocket. Litigation is too cheap in this commonwealth, for courts to be tender about calling upon those who indulge in it to pay for it. But the careful review of the testimony by the learned judge has greatly facilitated our labor, and saves us the necessity for doing more than applying the law to the case as stated by him.

The presumption was strongly against the plaintiff. He was the original debtor, and by his version he had overpaid, not by one erroneous payment, but by several. He waited eighteen years, and then made his claim upon the alleged mistake. According to plaintiff's own testimony, appellant denied that there was any mistake; insisted that the plaintiff still owed him a small balance; that he knew it was right, and there was no necessity to re-figure it; refused to name a man to go over the calculations; and, when finally told that plaintiff would have it done any way, and by Hoffman, said he would as lief Hoffman would do it as any one. Then plaintiff, according to his own account, said: "If Hoffman does this, if I owe you anything I will pay you, and if you owe me anything you will pay me. 'Yes, sir;' said he, (appellant.) 'If you owe me anything you must pay me, and if I owe you I will pay you.'" It is on this promise, if at all, that plaintiff must sustain his recovery.

It is clear, in the first place, that this was not an agreement

of submission to arbitration, or compromise of disputed rights. Defendant did not admit that plaintiff had ever had any claim, and, if he had, it was barred three times over. There was no element of reference or compromise in it, for Hoffman was not to do anything for defendant, to hear any evidence on his behalf, or to take any action that would bind him. The most that can be made out of defendant's language is an impatient, indifferent, acquiescence that, if a re-calculation was to be made, he would as lief Hoffman should do it as any one, but without the slightest assent to be bound by the result.

As a promise to pay, it was equally unavailing, for it was clearly conditional. There was no acknowledgment of a debt, but, on the contrary, a strenuous and reiterated denial. Nor was there any such acknowledgment after Hoffman's calculation was submitted to defendant. What he then said was, at most, an assent to the correctness of Hoffman's figures, but coupled at the same time with a reiteration of the denial of any debt, and an explanation that Hoffman was mistaken, because he had counted a receipt as for cash when it was only for a note. On plaintiff's own account, there never was any admission by defendant of a debt, and such promise as there was did not name any certain amount, and was merely a conditional promise to pay, " if I owe you." Under all our cases, this is not sufficient. In Emerson v. Miller, 27 Pa. 278, the promise was, "he would fix it, or settle it;" in Weaver v. Weaver, 54 Pa. 152, and McClelland v. West, 59 Pa. 487, "I agree to settle with him for above balance," and "I agree to settle this bill;" in Harbold v. Kuntz, 16 Pa. 210, "would settle and pay all he owed him;" in Miller v. Baschore, 83 Pa. 356, "After he is paid, I will pay you all I owe you;" in Landis v. Roth, 109 Pa. 621, "We will pay you every dollar," and, "Yes, we will pay you;" and in Lowrey v. Robinson, 141 Pa. 189, "I will pay him when I get ready." In each case, the words used were held insufficient to toll the bar of the statute, although in several of them the words quoted were in writing, and might therefore be considered as intended for a more formal and definite acknowledgment than if they had been used in mere conversation. The present case is no stronger than any of those cited, and not nearly so strong as some of them. It must go into the same class.

Judgment reversed.