# Stœver's Appeal.

After a report of auditors has been made and confirmed, marshalling the assets among the creditors of an intestate dying insolvent, it is too late for a creditor, who has not used due diligence, to come in for a *pro rata* share of the assets.

The Act of the 16th of June 1836, directing appeals to the Supreme Court to be determined according to the principles of justice and equity, extends only to appeals from the Orphans' Court, and does not touch the case of a report of auditors on an insolvent estate; nor in such case can there be a review, as the rights of the creditors are fixed by law, and equity follows the law.

Notice to creditors signed by the administrator, dated at a certain place, shows that to be his place of residence.

A direction to advertise for six successive weeks is complied with, though one of the notices be published the 20th of May, and the next on the 1st of June.

THIS was an appeal from the Orphans' Court of *Northampton* county.

Letters of administration were taken out to the insolvent estate of Isaac Salkeld, and auditors were appointed to examine the account of the surviving administrator, and to make a *pro rata* distribution among the creditors. An exception was filed by Frederick Stœver, one of the creditors of the estate, on the ground that the report of the auditors did not embrace all the admitted creditors, it being silent as to his claim.

The circumstances of the case were as follows:

Letters of administration were granted upon the estate of Isaac Salkeld, deceased, to George W. Salkeld and Isaac Salkeld, on the 9th of May 1839. George W. Salkeld, surviving administrator, &c. of Isaac Salkeld, deceased, filed his account in the Orphans' Court of Northampton county, on the 15th of December 1840, which was referred to auditors to examine, and, if occasion, re-settle and make distribution among the creditors, &c. on the 22d of January 1841. The auditors made their report to the Orphans' Court, re-settling the said account, showing the debts of said estate to be $4919.11, and assets in the hands of the

[Stœver's Appeal.]

administrator $3312.41, and making a *pro rata* distribution among the creditors, which report on the same day was confirmed *nisi*, on the 29th of April 1841. Frederic Stœver, on the 16th of August 1841, filed an exception as one of the creditors of Isaac Salkeld, that the report of the auditors, making distribution of the balance in the administrator's hands did not embrace all the admitted creditors of Isaac Salkeld, viz. that of Frederic Stœver, of the city of Philadelphia, whose claim was omitted; and on the same day, a rule was granted to show cause why the report should not be re-committed to the same auditors for correction, according to the exception taken. On the 26th of November 1841, the following petition was presented to the Orphans' Court of Northampton county:

" To the Honourable the Judges of the Orphans' Court of Northampton county.

The petition of Frederic Stœver, by his attorney Peter Ihrie, respectfully represents, that the account of Isaac Salkeld's administrator was filed in this court, and referred to auditors, on the 22d day of January 1841, to examine, and, if occasion, to re-settle the same and make distribution, which said auditors accordingly made a report of their proceedings on the 29th day of April 1841, and their report confirmed *nisi;* that the claim of Frederic Stœver, a creditor to a large amount of the said Isaac Salkeld, is omitted in said report, and no notice whatever taken thereof in the distribution made by the auditors, in consequence of which, the said Frederic Stœver is entirely shut out from all participation in said estate. Your petitioner therefore prays that the said account may be reviewed and re-examined, and such relief afforded as equity and justice may require."

On the argument of the rule, and on the hearing of the petition, evidence was given, that notice of the claim of Frederic Stœver was given to H. D. Maxwell, counsel of the administrator, which was the first notice that the said administrator received of the said claim, on the 7th of May 1841; and the following advertisement was given in evidence, as published in the Mauch Chunk Courier, printed at Mauch Chunk, Northampton county, where Isaac Salkeld resided at the time of his death:

*Mauch Chunk, May* 13, 1839.

Notice.—All persons indebted to the estate of Isaac Salkeld, deceased, late of Mauch Chunk township, Northampton county, are hereby notified to make immediate payment to the subscribers; and those having demands against said estate, are requested to present them, duly attested, for settlement.

[Signed]  ISAAC SALKELD, JR., } Administrators.
GEO. W. SALKELD, }

The same notice was published in the same newspaper on the

following dates, to wit: May 20, 1839; June 1, 1839; June 8, 1839; June 15, 1839; June 22, 1839; June 29, 1839; July 6, 1839; July 13, 1839; July 20, 1839; July 27, 1839; August 3, 1839; August 10, 1839.

The claim of Frederic Stœver against Isaac Salkeld, was as follows:

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| In 1823, 29th of March, due | . | . | . | . | . | . | $333.33 |
| 1824, " " " | . | . | . | . | . | . | $333.33 |

with interest from the time each payment fell due; being the two last instalments on a bond given by Isaac C. Salkeld, with Frederic Stœver as his surety, to the mayor, aldermen, and citizens of Philadelphia, in the penal sum of $2000, conditioned for payment of $1000 in instalments, the two last of which were paid by Frederic Stœver.

On the 27th of November 1841, after argument, the court dismissed the exception and confirmed the report of the auditors, and refused to grant the review, the court considering the case of *Mitchell's Estate* (2 *Watts* 87) as ruling the present case. From this decision Frederic Stœver appealed, and assigned the following reasons:

1. The Orphans' Court should have allowed the exception, re-committed the report to the auditors, with instructions to admit the claim of Frederic Stœver to a *pro rata* distribution, and that the published notice of the grant of letters of administration in this case was insufficient, &c.

2. Or the court should have reviewed and re-examined said report, and allowed the claim of the said Frederic Stœver to a *pro rata* distribution, or such other relief afforded as justice and equity required.

*Ihrie*, for the appellant.

Our exception was filed on the first day of the court succeeding that of the filing of the report of auditors, in conformity to the rule of court, which allows exceptions to the report of auditors to be filed on or before the first court day following that on which the report is made. The exception was therefore made in time. It is said that Stœver was guilty of neglect in not giving notice to the administrators of his claim within twelve months. The Act of 29th March 1832, sect. 19, requires this, but it is modified by the Act of 24th February 1834, which requires notice to be given by the administrators, for six successive weeks, together with their names and places of residence. The first notice was published on the 20th of May 1839; the second on the 1st of June; making an interval of eleven days. This is not such a successive week as is contemplated by the Act. The second publication should have been made on the 27th of May. The places of residence are not given. In *Mitchell's Estate*, (2 *Watts* 87), the question arose under a former Act of the 19th April 1794. No objection existed to the

[Stœver's Appeal.]

notice; and probably the report of auditors was confirmed before an exception taken.   At all events, we were entitled to have a review, under the recent Act of 13th October 1840, sect. 1.   The court may, within five years, grant a review of accounts, on error suggested in them.   He referred to 5 *Watts* 90.

*Maxwell*, for the appellee.

The rule of court is not applicable to this case, which must be governed solely by the Act.   The Act is explicit, that the account must be presented within twelve months.   Notice was published once a week, for six successive weeks.   It was dated at Mauch Chunk; and this, we say, was the place of residence.   This case cannot be distinguished from *Mitchell's Estate.*   The Act of 13th October 1840, supposing it to allow a bill of review, contemplates relief such as justice and equity may require, from errors in accounts.   No such errors or mistakes are here pretended.

The opinion of the Court was delivered by

Rogers, J.—This case was properly ruled on the authority of *Mitchell's Estate,* (2 *Watts* 87).   The Act of the 16th June 1836, extends only to appeals from the Orphans' Court; and consequently does not touch this case.   Nor will the supposed equity authorize a review, on the principles indicated in *Downing's Estate,* (5 *Watts* 90).   Equity follows the law; and it would be useless to grant the petition by a reference to auditors; who would be bound to decide the question in precisely the same way.   The rights of the creditors are fixed, and particularly the appellant, who, by his own default, is barred, as against the fund.   The Act is intended as well to quicken the diligence of the creditors, as for the security of the administrators.   In administering a fanciful equity, we must be careful to do no injustice to the administrators or to other creditors, who *may* have been already paid.   It is alleged that the notice is defective; the place of the administrators' residence is not given; and that the advertisement, in other respects, is not as is directed in the Act.   The objections are not tenable, because not true.   Notice *was* given to the creditors, signed by the administrators, dated at Mauch Chunk, their place of residence.   This is such a designation of their residence as could not be mistaken by the creditors.   The publication was made in consecutive weeks, and the only reason it is apparently otherwise, is that the publication of the newspaper, in which the notice appears, was changed from one day in the week to a subsequent day in the same week.

Decree affirmed.