# Hammett's Appeal.

1. The distribution of a decedent's estate among creditors as well as legatees and distributees, belongs exclusively to the Orphans' Court, and creditors are bound to appear and claim their respective debts in this court, or be debarred from the distribution.

2. The remedy of a creditor to establish his debt in a common-law court is not taken away thereby, but the pendency of an action in that court does not *ipso facto* entitle him to a share in the fund in the Orphans' Court, and to support his right to share therein, he must prove it before the auditor.

3. While a proceeding in a common-law court to establish a claim may be a ground for the exercise of the discretion of the Orphans' Court in suspending the distribution for a reasonable time and for a reasonable amount, it confers no jurisdiction on the former court to withdraw the fund from the control of the Orphans' Court.

4. The Orphans' Court therefore erred in making a decree postponing indefinitely the distribution of a large sum in the hands of executors, to await the action of other courts where suits were pending for claims against the estate which had not been presented to the Orphans' Court.

January 21st 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Appeal from the Orphans' Court of *Philadelphia county:* Of July Term 1876, No. 23.

This appeal was from the decree of the court made upon exceptions to the report of an auditor appointed to audit the account and make distribution of the balance in the hands of the executors of Barnabas Hammett, deceased.

Barnabas Hammett died January 22d 1873, leaving a will, in which James H. Campbell, Daniel M. Fox and N. B. Browne were appointed his executors. When the executors filed their first account it was referred to an auditor, Thomas Greenbank, Esq., who found the balance for distribution to be $84,688.67, one-third of which the widow of the decedent, Robenia Hammett, claimed as her distributive share. It appeared that a number of suits against the estate, involving large amounts, were pending in various courts of the state, but no creditor appeared before the auditor to lay claim to any portion of the fund.

The auditor, after a reference to these suits and the amounts involved therein, reported as follows:—

" This balance, under a reference to the auditor, which is to settle the account, and to distribute the balance, would, in an ordinary case, be distributed by the auditor among the widow and legatees, because no creditor who remains unpaid has presented and established a claim to any part of it. But taking into consideration the pendency of the numerous suits at law, above named, which are brought to the attention of the auditor, he is of opinion that although they are not presented as claims upon this fund, and it could therefore be distributed without regard to them, yet, as a matter of precaution, it would be wise to retain the larger part of this balance in the hands of the executors, after awarding a small proportion of

the distributive fund to the widow and legatees, until the adjudication of the next account. The auditor has therefore made distribution of one-third of the distributive balance.''

To this report Mrs. Hammett excepted, alleging that the auditor erred in not distributing the whole of the balance of $84,688.67, in the hands of the accountants.

The executors also excepted as follows :—

"And the accountants do especially except to the distribution of any portion of the fund at this time, because it appears that there are large claims against the estate in course of litigation, the result of which, if adverse to the executors, will more then absorb the entire personal estate."

The court (the opinion by Dwight, J.) held that the Orphans' Court had not exclusive but concurrent jurisdiction of the claims of creditors against the estate of a decedent, and made a decree dismissing the exception of Mrs. Hammett, sustaining that of the executors, setting aside the distribution reported by the auditor, and ordering the balance in the hands of the accountants to be retained by them until the further order of the court.

Mrs. Hammett took this appeal and assigned this decree for error.

*Walter D. Allen* and *William A. Porter*, for appellant.—It is not contended by the appellant that the Orphans' Court has exclusive jurisdiction of every claim against the estate of a decedent. To ascertain the amount due a particular creditor, and to enforce its payment out of the real estate of the decedent, or out of such of the personal estate as may not be in the actual control or custody of the Orphans' Court for distribution, it is admitted the common law courts have concurrent jurisdiction. But when an executor or administrator has filed his account, the Orphans' Court has exclusive jurisdiction to settle it, and to make distribution of the balance among those entitled to it. The power to make distribution necessarily involves the power to ascertain the amount of the debts, and every claimant who wishes to avail himself of the fund must appear and establish his claim, or lose his right to participate in the distribution of the particular fund then in hand. In the present case no creditor appeared before the auditor, whose claim remains unpaid. It was therefore the duty of the court to have made distribution of the balance : Act of 29th of March 1832, Purd. Dig. 1103, pl. 4 ; Act of 16th of June 1836, Purd. Dig. 1104, pl. 8 ; Act of 13th of April 1840, Purd. Dig. 446, pl. 200 ; Kittera's Estate, 5 Harris 416 ; Gochenaur's Estate, 11 Id. 460 ; Bull's Appeal, 12 Id. 286 ; Mitchell's Estate, 2 Watts 87 ; Stoever's Appeal, 3 W. & S. 154 ; Weber *v.* Samuel, 7 Barr 499 ; Whiteside *v.* Whiteside, 8 Harris 474 ; Shollenberger's Appeal, 9 Harris 341 ; Horner *v.* Hasbrouck, 5 Wright 179 ; Everman's Appeal, 17 P. F. Smith 336 ; Mussle-

man's Appeal, 15 Id. 480; Dundas's Appeal, 23 Id. 474; Sergeant's Executors *v.* Ewing, 6 Casey 75.

The legislation which gave jurisdiction to the Orphans' Court would not be effective if it did not mean that where the work of distributing a fund properly before the court is begun, it must be completed. Of what avail are all the powers of the court conceded to it by the decisions if they can only be exercised after the determination of every claim against the estate which may be pending in other jurisdictions. The law favors the diligent only, and those who failed to make their claim upon the fund should be left to their remedies against the remaining estate or against the distributees on their refunding bonds.

*George Bull* and *Henry M. Phillips,* for appellees.—That the jurisdiction of the Orphans' Court is concurrent and not conclusive: Swain *et al. v.* Ettling, 8 Casey 489; Walthaur's Heirs *v.* Gossar, Id. 259; McLean's Executors *v.* Wade, 3 P. F. Smith 146; Van Dyke's Appeal, 10 Id. 487; Woodward's Appeal, 2 Wright 322.

The Orphans' Court, in the exercise of its powers as a court of chancery jurisdiction, is bound to protect the rights of creditors. The executors and accountants are trustees for creditors. The fund in their hands is a trust fund, and the court must see that the trust is fully and properly executed. The widow and heirs have no right, either equitable or legal, to any part of the trust fund until the rights of the real *cestui que trustent,* the creditors, have been fully secured. In administering such a trust it would be inequitable for the Orphans' Court, having been informed of large claims against the estate, more than sufficient to absorb the fund, to hand over the trust fund to the widow and heirs.

Chief Justice Agnew delivered the opinion of the court, February 12th 1877.

The exclusive jurisdiction of the Orphans' Court to ascertain the amount of the estates of decedents, and order their distribution among those entitled, creditors as well as legatees and distributees, is so fully settled that nothing but future legislation can alter the law. The sources of this jurisdiction, and its conclusiveness, will be found in a long line of well-considered decisions : Kittera's Estate, 5 Harris 416; Whiteside *v.* Whiteside, 8 Id. 473; Bull's Appeal, 12 Id. 286; Ashford *v.* Ewing, 1 Casey 213; Black *v.* Black, 10 Casey 354; Mussleman's Appeal, 15 P. F. Smith 480; Everman's Appeal, 17 Id. 335; Dundas's Estate, 23 Id. 474.

In the first instance under the 19th section of the Act of 29th March 1832, the application for distribution among the creditors, came from the executor or administrator, when the assets were insufficient to pay all the debts. The standing of the *creditors* in the Orphans' Court under this act was not so clear; but when the Act

of 13th April 1840, sect. 1, was passed authorizing any creditor to apply for distribution, their standing became entirely certain. This act was followed by Kittera's Appeal, and the long line of cases which now hold that the distribution of a decedent's estate among *creditors* as well as legatees and distributees belongs exclusively to the Orphans' Court. So binding is the effect of such a distribution that even the Commonwealth not having given notice of her claim, is barred from coming afterwards upon the distributed estate: Mitchell's Estate, 2 Watts 87. This effect of the 19th section of the Act of 1832, has been held to be imperative, if the notice to creditors has been properly given as required by that section: Boyer's Estate, 5 Watts 50; Stœver's Appeal, 3 W. & S. 154. The creditors being thus bound to appear and claim their respective debts before the auditors appointed to settle and adjust their claims, a legislative protection of their rights will be found in the provisions contained in the 20th section of the Act of 1832 (Purdon 446, pl. 199), that when any of the heirs, legatees, distributees or creditors of a decedent reside out of this state, or out of the United States, or where from other circumstances it may be expedient to give additional or further notice, it shall be given according to the discretion of the Orphans' Court. Outside of decided cases when we examine the subject in the light of reason and necessity, the distribution of a decedent's estate among all entitled to have it, must belong to the Orphans' Court. It has possession of the fund, for it controls and directs all those who have its custody, and it is only through its decrees the fund can be reached. It is true the remedy of the creditor to establish his debt in a common-law court is not taken away, for this may be necessary to stop the running of the Statute of Limitations, to decide disputed and complicated questions, and make the settlement afterwards before the auditors more easy and convenient. But this does not, *ipso facto*, bring the pursuing creditor on the fund in the Orphans' Court. On the contrary, the law gives a remedy to prevent a sale under execution, and to carry the creditor into the Orphans' Court, when the condition of the estate requires it to prevent a sacrifice of the general interest. The creditor who desires to share in the fund in the hands of an executor or administrator, must present his claim before the auditors, and when there, it is subject to attack, and he must establish it. If he have already established it in a court of law, it is so much the better, but if not under the decisions heretofore cited, he must support his right to share in the fund before the auditors, by proving it. Thus it is evident that a proceeding in a common-law court to establish a claim, while it may be a reasonable ground for the exercise of the sound discretion of the Orphans' Court, in suspending proceedings in distribution for a reasonable time, and to a reasonable part of the estate, necessary to satisfy the demands of creditors, according to the 39th and 40th

[Hammett's Appeal.]

sections of the Act of 24th February 18?4 (Purd. 447–8), confers no jurisdiction on the former court to withdraw the fund from the power or control of the Orphans' Court.   Of necessity, as we have seen, the latter court must proceed to distribute the fund, and cannot be hindered or delayed by actions pending in other courts, beyond a time which its own exercise of discretion may determine to be necessary.   It would be a most ruinous doctrine that estates could be tied up under a claim of litigation elsewhere, when the Orphans' Court has full power to adjudicate all claims of the creditors.   If it were so, not only legatees and distributees but domestic creditors might have to wait the bidding of distant tribunals not in sympathy and having no motive to speed a cause.   Our conclusion does not affect the prerogative of other courts, but only the rights of the creditors.   They may, if they choose, persist in a common-law suit to the end to reach real estate or some other fund, but if they fail to come in on a fund in due course of distribution in the Orphans' Court, after notice of the proceeding there, they may lose their grasp upon a fund which that court alone has jurisdiction to distribute among the creditors.

We think, therefore, that the Orphans' Court erred in trenching upon its own jurisdiction so far as to permit the fund before it to await indefinitely the action of other courts.   The decree in itself might perhaps be sustained with a slight modification, which would give it a temporary effect merely, as a discretionary suspension until the notice provided for in the 20th section of the Act of 1832 could be given.   But it is manifest this was not the purpose of the decree, and it must, therefore, be reversed to enable the court to make such further order as may be necessary to speed the proceeding in distribution and make it effective.

> Decree reversed, the costs of the appeal to be paid out of the estate, and the record ordered to be remitted with a *procedendo*.