## Diehl's Estate.

*Ellis L. Orvis*, for exceptant; *N. B. Spangler* and *Ivan Walker*, for estate. *S. D. Gettig*, for sundry creditors.

FLEMING, P. J., Jan. 6, 1930.—This matter is before the court upon exceptions to the report of the auditor appointed to audit and distribute the balance shown by the second and final account of the administrators of this estate. The gist of the exceptions filed is the refusal of the auditor to permit Irvin G. Gray, a creditor of the estate, who did not receive any *pro rata* amount upon the distribution of the balance shown by the first and partial account of the administrators herein, to be equalized with other creditors, from the balance shown by the second and final account, before participating *pro rata* with other creditors from the balance shown by such second and final account.

Irvin G. Gray was the holder of the decedent's note in the sum of $1175, dated Oct. 25, 1915, at four years, with interest and an attorney's commission of 5 per cent. The administrators herein refused to recognize such note as a valid claim against the decedent's estate, whereupon Gray instituted an action in the Court of Common Pleas of Centre County to No. 178, May Term, 1927. The suit was still pending and untried at the time of the first audit. While the auditor's report does not formally show the appearance of Gray or his counsel at any of the stated sittings of the auditor, or that the Gray claim was ever, prior to the audit of the second and final account, attempted to be formally proven before the auditor, it, nevertheless, appears that the auditor was cognizant of and gave consideration to such claim before preparing and filing his report in connection with the first and partial account. In such report the auditor says: "Ellis L. Orvis, of Orvis, Zerby & Dale, attorney for Irvin G. Gray, appeared before your auditor on the 19th day of April, 1928, and offered a sworn statement of a certain note dated Oct. 25, 1915,

upon which suit was brought, wherein Irvin G. Gray is plaintiff and M. I. Gardner and Rena Z. Diehl, administrators of the estate of Joseph D. Diehl, of Howard Borough, Centre County, Penna., deceased, are defendants, indexed to No. 178, May Term, 1927, for the sum of $1175, with interest and attorney's commission of 5 per cent. for collection. Your auditor finds that suit was brought upon said note May 4, 1927, and plaintiff filed his statement of claim March 19, 1928, and on April 2, 1928, the defendant filed an affidavit of defense denying the indebtedness and the case is now pending in court. The testimony before your auditor was closed on the 16th day of January, 1928, and your auditor had no knowledge of this claim, no one appeared in behalf of said claim and the other creditors had no notice whatever of this claim and the amount due, if anything, is undetermined, and inasmuch as this is only a partial distribution of the decedent's estate, this claim is not allowed to participate in this distribution, but the rights of Irvin G. Gray, the plaintiff, are preserved without prejudice for further consideration in the final distribution and settlement of this estate."

Subsequent to the filing of the auditor's report in the matter of the first and partial account and prior to the auditor's sittings in the matter of the second and final account, the action in the Common Pleas was tried, a verdict rendered in favor of Irvin G. Gray, a motion for new trial dismissed, judgment entered upon the verdict, and no appeal taken. At the audit of the second and final account this judgment was duly proven before the auditor. It is to be noted here that the auditor of the first and partial account and the auditor of the second and final account were one and the same person.

The auditor is fully estopped, by his report in the matter of the first and partial account, from denying that Gray or his counsel had brought to his attention the matter of the claim in dispute. He asserts the filing of a sworn statement by Gray's counsel on April 19, 1928, whereas the auditor's report was not filed until May 28, 1928. Had it been the purpose of the auditor to insist upon an adjudication of Gray's claim in the Orphans' Court, regardless of the pending suit in the Common Pleas, it was his positive duty to reopen his audit, notwithstanding the fact that testimony had been formally marked closed, to notify all persons in interest of a time and place for further hearing in the matter, and to pass finally and definitely upon the questions of law and fact involved therein. The auditor *had* notice of Gray's claim. Otherwise, he could not have mentioned it in his first report. Ample time existed for notifying creditors, and if it were his thought that the validity of the Gray claim should be determined in the Orphans' Court and insufficient time existed for the proper disposition thereof, the auditor's powers could have been enlarged or other suitable adjustment had. We are convinced, therefore, that the auditor did not, at the time of filing the first report, seek to have the Orphans' Court solely to adjudicate the validity of the Gray claim, but that he was content to hold it in abeyance pending the verdict of a jury in the Common Pleas. We are further convinced that by reason of this attitude Gray and his counsel were induced to await the second audit, confident that "the rights of Irvin G. Gray, the plaintiff, are preserved without prejudice for further consideration in the final distribution and settlement of this estate." That Irvin G. Gray was not guilty of laches is evident, and we so find.

We are of the opinion that the rule is well settled that Gray is entitled to an equalization to the extent of the dividend allowed creditors on the distribution of the balance shown by the first and partial account, and from the balance shown by the second and final account, before participating on an

equal basis with other creditors in a *pro rata* dividend from such second and final account.

Counsel for the administrators attempts to draw a distinction between creditors and those entitled to distributive shares, either by intestacy or under express provisions of a last will and testament, seeking thereby to show that the long line of decisions in Pennsylvania, sustaining Gray's contentions in the instant case as to right of equalization on a subsequent distribution, does not apply herein. With this we cannot agree, but, on the contrary, hold that creditors, being of a preferential class (see Fiduciaries Act of 1917, § 13 *(a)*, P. L. 475), are all the more strongly entitled to such equalization. Before those entitled to distributive shares, either through intestacy or under express provisions of a last will and testament, can participate, funeral expenses, medicine furnished and medical attendance given during the last illness of the decedent and servant's wages not exceeding one year must be paid. Rents not exceeding one year must be provided for, and all other debts, without regard to quality of the same, must be deducted before such shares are allowable. It is proper, therefore, to conclude that if the law permits those claiming by intestacy or by express provisions in a last will and testament to be equalized from a subsequent distribution, it is all the more binding that those holding preferential claims known as "all other debts, without regard to quality," should be accorded a like right.

A decree in the Orphans' Court confirming an account is conclusive only as to the fund then distributed, and does not bind the court when another account in the same estate comes before it for adjudication: Guenther's Appeal, 4 W. N. C. 41. Again, we find in Landmesser's Estate, 13 Pa. Superior Ct. 467, that where a legatee has been overpaid out of the personal estate, the amount must be charged against him at the next distribution, and he is entitled to no further distribution until the shares of the other distributees are equalized. Further, it has been held that a decree of the Orphans' Court upon the first account of an executor is conclusive only as to the fund being distributed. It does not determine that all subsequent distributions must be made upon the same theory: Stahl's Estate, 25 Pa. Superior Ct. 402. And we find in Appeal of Gable's Executors, 40 Pa. 231, that it is not error to permit a partial distribution of an estate, where the right of one claimant has not been determined, if in the opinion of the Orphans' Court enough of the estate remains thereafter to satisfy the claim when established.

While we have shown that Gray has not been guilty of laches in the instant case, we find from the authority of Grim's Appeal, 109 Pa. 391, that, even though he had not made any effort to bring his claim to the attention of the auditor at the first audit, he would not be barred from having his claim equalized at the second audit. His only risk, as pointed out by his counsel, was whether or not there would be sufficient funds available on the second account to equalize his claim with the others. It is to be borne in mind that he does not seek to disturb the first distribution, and he could not do so if he wished. Equalization from this fund, that is, an adjustment of allowance in such a manner that with the closing of the estate all will be found to have been considered on an equal basis, is all that he asks. The authority of Grim's Appeal, *supra*, says in part: "Where, on a partial distribution of an intestate's estate, one of the distributees does not appear and the entire fund then for distribution is awarded to those who do appear and make claim, the inequality will be corrected on a subsequent distribution of other funds belonging to the decedent's estate, by awarding to the one who received nothing on the first distribution enough to make up his proportionate distributive share of both funds;

*if the second fund is insufficient to make him equal with the distributees of the first fund, the whole of the second fund will be awarded to him."*

Again, in Yetter's Estate, 160 Pa. 506, following the rule laid down in Grim's Appeal, *supra,* it appears that where, upon a partial distribution of an estate, certain relatives do not participate, and the entire fund for distribution is awarded to certain only of the distributees, the inequality will be corrected on a subsequent distribution of other funds belonging to the decedent's estate, by awarding to the one who received nothing on the first distribution enough to make his proportionate distributive share of both funds.

In Reed's Estate, 237 Pa. 125, we find the court to say: "In other words, the widow having received more than she was entitled to in the former distributions, and the legatees and heirs less than their shares under the will and the law, can there be such an equitable distribution under present and future accounts as to give each distributee his or her proper share in the entire estate. We cannot regard this as even a doubtful question under the authority of our own cases. Where, in the distribution of a partial account, a distributee does not appear, and the entire fund then for distribution is awarded to those distributees who do appear, the inequality will be corrected in a subsequent distribution of other funds belonging to the same estate, by awarding him who received nothing on the first distribution enough to make up his proportionate distributive share of both funds: Grim's Appeal, 109 Pa. 391. . . . There is nothing new or novel in the principle underlying these cases. It is just, reasonable and equitable. It is predicated upon the theory that in the distribution of a partial account the rights of distributees are not finally adjudicated. In an accounting by a trustee, it is recognized as an elementary principle that it is proper to compute the share of each distributee in the entire net fund accounted for, no matter whether there be one or several accounts, and to deduct from each share all former payments. . . . This is what the rule of the above cited cases means, and there is no reason in law or equity why it should be disturbed. The doctrine of *res adjudicata* in the sense urged by the learned counsel for appellants has no application to the facts of the present case. The adjudication of a partial account simply awards distribution of the fund then in court, and is not a final determination of the rights of the parties: Leslie's Appeal, 63 Pa. 355; Lease *v.* Ensminger, 5 Pa. Superior Ct. 329."

Again, in Kellerman's Estate, 242 Pa. 3, it is held that while a decree distributing the balance on a partial account is final and conclusive as to what was therein contained, it is not final and conclusive as to what was reserved for a second accounting.

The learned counsel for the estate have cited for our consideration a number of cases which we have carefully considered. All of such cases, however, appear clearly distinguishable from the case at bar.

Hammett's Appeal, 83 Pa. 392, has to do solely with the duty of a creditor to appear in the Orphans' Court and prove his claim. Gray is not relying, as his basic right, upon the judgment obtained in the Common Pleas, but upon the proof of such judgment before the auditor in the Orphans' Court. Nor is the question of suspending distribution relevant here. Gray admits that the distribution of funds shown by the first account is final and conclusive. It is his right to be equalized from the second fund, which he asserts.

Rorke's Estate, 10 Dist. R. 754; Yocum *v.* Commercial National Bank, 195 Pa. 411, and Appeal of Lex, Exec'r, 97 Pa. 289, hold that the distribution of a decedent's estate is solely within the jurisdiction of the Orphans' Court, and that while the court will, in the exercise of its discretion, suspend the distri-

bution for a reasonable time and set apart a reasonable amount to meet the claims of creditors who elect to proceed in another jurisdiction, it is error to postpone distribution indefinitely to await the action of another court. We are not concerned in the instant case with a postponement of distribution, but with an equalization on present distribution, where the fund is wholly sufficient to permit the equalization sought and to provide a further *pro rata* dividend among *all* creditors from the balance remaining, thus allowing the estate to be finally closed with *all* creditors having shared alike.

Guenther's Appeal, 4 W. N. C. 41, also cited in the estate's brief, is not in point. As pointed out above, this case holds that a decree in the Orphans' Court confirming an account is conclusive only as to the funds then distributed, and does not bind the court when another account in the same estate comes before it for distribution. We again point out that Gray does not seek to disturb the fund adjudicated in the first audit and there distributed, for this he could not do. It is an equalization from the second account alone which he asks.

· Kline's Appeal, 5 W. N. C. 468, holds merely that a decree of partial distribution of an estate is conclusive only as to the fund there distributed. There is no denial of this rule in the instant case.

Stoever's Appeal, 3 W. & S. 154, is wholly dissimilar from the instant case. There was no partial distribution. On the first and final account the estate was clearly insolvent. The auditor's report was made and confirmed. A creditor found not to have used due diligence sought to then come in for a *pro rata* share. The court held that he was too late. In the instant case the claimant seeks to be equalized and put on an equality with other creditors possessing no rights superior to his. There are enough funds to do this.

The same situation existed in Mitchell's Estate, 2 Watts, 87, cited by the estate.

In Thomson's Estate, 5 W. N. C. 14, a creditor who had once submitted to the jurisdiction of the Orphans' Court withdrew therefrom, and then sought to have distribution in the Orphans' Court stayed until his claim was adjudicated in another forum. This the court very properly refused to do. No such situation exists in the instant case.

Wagner's Estate, 31 Montg. Co. Law Repr. 21, is not directly parallel with the case at bar. It is true that in this case there were two accounts and two audits, and that the claimant had failed to prove his claim at the first audit and was, therefore, barred from an equalization from the second fund. But here the question of personalty and realty existed, and there were certain claims which had been made liens upon the realty and certain ones which had not been so adjudicated. Furthermore, there was a contest as to the validity of the note upon which claimant sought to recover and as to the competency of certain testimony upon which proof of the claim was based. There was also testimony to show that claimant had received a 5 per cent. dividend in a bankruptcy distribution upon the same claim. Furthermore, in the cited case the court held that claimant was guilty of laches, whereas the contrary exists here.

We conclude, therefore, that the exceptions to the auditor's report complaining of the auditor's refusal to first equalize Irvin G. Gray to the extent of the dividend received by creditors on the first distribution should be sustained. The rule is plain that such is his legal right, especially since he has done all that could be expected of him and is guilty of no laches. To permit him to receive an equalization is but to enable this estate to be closed with all

claims having been disposed of on an equal basis. The other exceptions, being without merit and not having been pressed, are dismissed.

And now, Jan. 6, 1930, after argument and upon careful consideration, exceptions first to seventh, both inclusive, are sustained and exception eighth is dismissed. The report of the auditor appointed to audit and make distribution of the second and final account is recommitted to the auditor with a direction that he shall restate such report, first awarding to Irvin G. Gray the sum upon the basis of .4611 per cent., being the dividend awarded creditors on the first fund for distribution; that the amount of such last-named award be subtracted from the second fund for distribution and the balance remaining to be distributed *pro rata* among all claims proven, including the claim of Irvin G. Gray.