## Devilbiss' Estate

*E. M. Biddle, Jr.*, and *T. Z. Minehart*, of *Minehart & Crider*, for exceptants.
*W. S. Hoerner* and *G. W. Atherton*, contra.

DAVISON, P. J., September 18, 1934.—Florence F. Devilbiss died on March 18, 1932. On January 28, 1933, a suit was brought in the Court of Common Pleas of Franklin County, the county of her domicile and in which her real estate was situate, by J. Irvin Garnes and Violet E. Garnes against Florence Devilbiss Foltz, administratrix c. t. a. of Florence F. Devilbiss, deceased; and the prothonotary was directed to index said action against Florence F. Devilbiss and Florence Devilbiss Foltz, administratrix c. t. a. of Florence F. Devilbiss, deceased, in order to continue the lien against decedent's real estate. On the same day, the plaintiff's statement of claim was filed, service was accepted by the attorney for the defendant on February 3, 1933, and an affidavit of defense was filed on February 16, 1933.

A first and final account of said estate was filed on November 2, 1932, and confirmed on December 3, 1932, and John R. Lashley, Jr., was appointed auditor on December 17, 1932. At a hearing before said auditor on March 2, 1933, the plaintiffs in the action in the court of common pleas presented for allowance the note on which said suit had been brought, and to this an objection was entered on behalf of the accountants and the administratrix d. b. n. c. t. a., said objection being that, suit having been brought on the present claim in the court of common pleas and a statement having been filed therein and served on the defendant, the claimants have elected their forum and have at present no standing to present this claim before the auditor. At a later date, this objection was overruled and the claim allowed to participate in the distribution. To this action exceptions were filed and argued before the court. These exceptions now before us raise two questions:

(1) Was the auditor right in assuming jurisdiction of the Garnes claim under the undisputed facts.

(2) Was the auditor correct in his findings of fact relative to the Garnes claim.

The position of the exceptants is founded on the following rule of law cited in their brief: "Where two actions between the same parties, on the same

subject, and to test the same rights are brought in different courts, having concurrent jurisdiction, the court which first acquires jurisdiction, its power being adequate to the administration of complete justice, retains its jurisdiction and may dispose of the whole controversy, and no court of coördinate power is at liberty to interfere with its action."

While the correctness of this rule of law cannot be questioned, we do not find it applicable to the instant case.

The Fiduciaries Act of June 7, 1917, P. L. 447, sec. 15a, provides as follows:

"No debts of a decedent, including the cost of settlement of the estate and the funeral expenses of the decedent, except as provided in clauses (b), (g), and (h) hereof, shall remain a lien on the real estate of such decedent longer than one year after the decease of such debtor, unless within said period an action for the recovery thereof be brought against the executor or administrator of such decedent; and such action shall be indexed, within said period, against the decedent and such executor or administrator, in the judgment index in the county in which such action is brought, and also in the county in which the real estate sought to be charged is situate, and be duly prosecuted to judgment; and then to be a lien only for the period of five years, unless the same be revived by writ of scire facias against the decedent, his heirs, executors or administrators, and the devisee, alienee, or owner of the land sought to be charged, in the manner now provided in the case of the revival of judgments."

In considering this act, and particularly with reference to its relation to the powers and duties of the orphans' court as regards the distribution of decedents' estates, we must view its intention with reference to lands of the decedent.

The law, insofar as it made real estate liable for debts of a decedent, is ably reviewed by Mr. Justice Simpson in Kirk v. Van Horn et al., 265 Pa. 549. By reference to that opinion we find that prior to the passage of the Act of April 19, 1794, 3 Sm. L. 143, sec. 2, the lien as it affected real estate was indefinite in point of time. That act limited the lien to "seven years after the decease of such debtor, unless a demand thereof shall be made, or an action for the recovery thereof commenced and duly prosecuted against his or her executors or administrators, within the said period of seven years". This was followed by the Act of February 24, 1834, P. L. 70, in section 24 of which it was provided: "No debts of a decedent, except they be secured by mortgage or judgment, shall remain a lien on the real estate of such decedent longer than five years after the decease of such debtor, unless an action for the recovery thereof be commenced and duly prosecuted against his heirs, executors or administrators, within the period of five years after his decease". This remained the law until the passage of the Fiduciaries Act of 1917, above quoted.

What was the purpose of these various acts? It was evidently not to make distribution of the fund derived from said real estate, for that is exclusively the province of the orphans' court. Section 9e of the Orphans' Court Act of June 7, 1917, P. L. 363, provides that the jurisdiction of the orphans' court shall extend to and embrace "The distribution of the assets and surplusage of the estates of decedents among creditors and others interested"; and in reference to the former Orphans' Court Act, which contained a like provision, the Supreme Court in Yocum v. Commercial National Bank of Pa., 195 Pa. 411, 415, said: "This court has settled in a long line of decisions that the orphans' court has exclusive jurisdiction to ascertain the amount of a testator's estate as well as to make a distribution of it. The mode of procedure is fully provided by the various acts of assembly."

It therefore being the exclusive duty of the orphans' court to make distribution of a decedent's estate, what purpose does section 15a of the Fiduciaries

Act serve? The effect of a judgment under this act, as a judgment, is not to create a lien collectible as ordinary liens, but only to continue a lien already in existence against real estate, and it must be collected through the orphans' court. As we view it, this proceeding is peculiar to itself and does not lend itself to comparison with other rules in reference to courts of concurrent jurisdiction. It is not a true case of concurrent jurisdiction in two courts. The orphans' court has jurisdiction of a man's debts and the distribution of his estate from the minute he dies, and in furtherance of that duty it may pass upon the validity of his debts and determine which of them are to be paid by his estate and from what fund of that estate they should be paid. This power never leaves that court, but to assist those interested the law provides another tribunal, the court of common pleas, so that the real estate of the decedent, which otherwise would be discharged from any responsibility for these debts, may be held liable therefor for a limited time if proper steps are taken in that court to preserve that lien, and if those steps are taken and pursued to judgment that judgment can then be collected in the orphans' court. The proceeding to charge the land is strictly in rem, and the acts of assembly are statutes of repose and not merely of limitation, inuring in favor of the widow, heirs, and devisees, as well as purchasers from them: Kirk v. Van Horn et al., supra. The suit in the common pleas is provided for as that is the court in which the index would inform those inquiring as purchasers or otherwise, in the regular line of liens, of the existence of the action to keep the debt a lien on the real estate of the decedent.

The exceptants reply to this that, while it is true that the filing and indexing of the suit by the creditor was a necessity in order to retain his lien against the real estate, no further action was necessary, and he having filed his statement and required affidavit of defense thereto must now proceed in that tribunal to determine the justice or injustice of his claim and then, if successful in that court, return to the orphans' court with his judgment thus obtained for allowance. The learned counsel for the exceptants states the law to be: "The jurisdiction of the court which first takes actual cognizance of the controversy becomes exclusive in the absence of any peculiar equitable ground to the controversy". While we have no quarrel with this statement of the law as such, we do not feel that it has any bearing on the case now before us.

Section 15a of the Fiduciaries Act does not oust any of the powers of the orphans' court, but only provides how a claim already a lien on real estate may be continued. It is altogether a proceeding in rem, to charge the thing itself, the real estate, with the continuation of a lien, and is not intended to operate otherwise. This being so, we must consider the act as a whole in its requirements. It not only requires that an action be brought against the executor or administrator and duly indexed but also that it be duly prosecuted to judgment, and provides that the lien shall remain only for a period of 5 years unless the same be revived. Now what are these requirements? First, that the suit be brought and indexed; and second, that it be prosecuted to judgment. The reply to that might be that there was no necessity to prosecute to judgment until near the expiration of 5 years, but that is no sufficient reply to the requirements of the act of assembly. Is a party to be penalized because he acts promptly rather than waiting until the last moment? We think not. If an action should be brought within the year, and then the estate not be settled until near the end of the 5-year period, and the creditor thought it necessary to proceed with his action in the common pleas so as to secure his judgment within the time limit and, after he had so proceeded but before the matter had come to trial, the estate should be closed and called for audit, would he then

be compelled to proceed to judgment before he could come into the orphans' court with his claim? We cannot for a moment believe that the law requires so vain a thing, and if he is not barred under those circumstances he is not barred in the instant case. It is said in Bindley's Appeal, 69 Pa. 295, 298, speaking of the Act of February 24, 1834: "The words of the act, as we have seen are, 'unless an action for the recovery thereof be commenced and duly prosecuted.' These are strictly technical words, and according to the well established canons of interpretation, should be received in their technical signification".

It is also said in that case (p. 299): "The leaning of this court, through the whole current of the numerous decisions upon this subject, has evidently been to favor the heir, and to require of the creditor the vigilant prosecution of his demand in the mode pointed out."

We are unable to see how this plaintiff can be held to have elected a tribunal and barred himself from presenting his claim for allowance by the tribunal set up for that very purpose, by following the specific method of procedure provided by law for his protection. It seems to us that he no more selected his court in a manner which barred him from the orphans' court by prosecuting his claim than he did by filing it under the same act of assembly. The whole proceeding was one intended to retain the lien the creditor had on the real estate of the decedent, and the filing of his statement did no more to preclude him from his recourse to the orphans' court than did the bringing of the suit.

In Kirk v. Van Horn et al., supra (p. 552), the court speaking of the time when the 5-year period ran, said: "If this conclusion is correct then the time when the scire facias must be issued, fluctuates according to the tardiness or diligence of the creditor", and, hence, if the reasoning of the exceptant is followed, we would be penalizing the one who was diligent and rewarding the one who was tardy. We do not agree to this. In this case, it is said: "the maxim vigilantibus non dormientibus jura subveniunt is especially applicable to this class of cases, these acts being statutes of limitation and repose for the benefit of widows, heirs and devisees and those claiming under them, as well as purchasers", and under this maxim in Broom's Legal Maxims it is said (p. 688) "the using of legal diligence is always favoured, and shall never turn to the disadvantage of the creditor." It would seem to us a most unfair interpretation of the Fiduciaries Act to hold that, because the creditor had not only brought his suit but had also filed his statement of claim, thus beginning the necessary steps to prosecute it to judgment, he could not, in the meantime, if an auditor was available, present his claim to that auditor and discontinue the action which had by this means become unnecessary.

In addition, we find that the courts of this State have clearly declared that a suit pending in the court of common pleas is not a bar to presentation and allowance of the same claim in the orphans' court, and hence we are constrained to hold against the exceptants by decided cases. In Craig's Estate, 11 Luz. L. R. 205, where a suit had been brought and was pending in the common pleas court when the audit was held, Judge Freas said: "The defendant has been dead for three years, and during that time, as well as for at least six years previous to his demise, the case could have been tried at any term of Common Pleas. The case is a proper one for a jury; but the plaintiff, having failed to prosecute his suit to a conclusion, might have proved his claim at the audit, but this he was not prepared to do. The fact that suit on a claim against a decedent's estate is pending in the Common Pleas does not oust the jurisdiction of the Orphans' Court to pass upon the claim and to make distribution. In its discretion this court may delay distribution to await the result of pending litigation in the Common Pleas, but to tie up a fund indefinitely to await

the convenience of a plaintiff who has slept upon his rights, under the facts herein given, would, in our judgment, be a gross abuse of that discretion. Other creditors who have duly proved their claims are entitled to present payment, and legatees have a right to demand that claimants upon the fund should prove their claims in a reasonable time. Hammett's Appeal, 83 Pa. 392; Rorke's Estate, 10 D. R. 754; Boys' Estate, 1 C. C. 68."

In Shallcross' Estate, 13 Phila. 374, it is said by Judge Penrose: "In proceedings to distribute, the Orphans' Court, as has often been said, has jurisdiction to inquire into and determine all questions in the way of distribution affecting the rights of creditors, legatees and heirs, or their assignees. And the parties interested have the right to insist upon the exercise of this jurisdiction, even though the identical question be involved in proceedings in another court. Thus in Hammett's Appeal, 2 Norris [83 Pa.], 392, it was held that the court had no right to withhold from distribution a portion of the fund in order to meet the claims of creditors who had brought suit in the United States Court. And in Otterson vs. Gallagher, 7 Norris [88 Pa.], 355, although the question of priority, as between an assignee of a legatee and an attaching creditor was pending in the Common Pleas, that court was held to be bound by the decision of the Orphans' Court making distribution and awarding in favor of the assignee."

In Lex's Appeal, 97 Pa. 289, the Supreme Court distinctly holds that a proceeding in the common pleas does not divest the jurisdiction of the orphans' court, it being said in that case (p. 292) : "The money in contention arises from a legacy bequeathed by said Bonsall to his son Jeremiah. On an audit of the appellant's account, on the 18th June 1880, before the auditing judge, the appellee claimed this legacy by virtue of an assignment from Jeremiah Bonsall, dated 22d April 1879. It also appeared from the evidence there given that on the 13th May 1879, Dixey issued an attachment-execution out of the Court of Common Pleas No. 3, of said county, against the appellant, executor, as garnishee of Jeremiah Bonsall, on a judgment against the latter. The attachment had been duly served, and was then pending. Although this attachment was given in evidence, yet it is averred in the appellant's history of the case that the plaintiff therein did not appear at the audit, either in person or by counsel, and deny the right of the Orphans' Court to adjudicate upon his right under the attachment, and claim that the jurisdiction of the Common Pleas had attached before the account of the executor was filed. The auditing judge awarded the legacy to the appellee, and the adjudication was confirmed by the Orphans' Court. No appeal has been taken therefrom. The appellant now interposes that attachment still pending against him as a sufficient reason for not paying the money to the appellee. This involves a consideration of the effect to be given to the decree of distribution made by the Orphans' Court. It is a court of record. It had jurisdiction over the executor and the fund: Commonwealth v. Judges, 4 Barr [4 Pa.] 301; Culbertson's Appeal, 26 P. F. Smith [76 Pa.] 145. Its decree is conclusive unless appealed from within the time specified by Act of Assembly. It had an undoubted right to distribute the fund in the hands of the executor. It is objected that under the proceedings on the attachment the Common Pleas ousted the Orphans' Court from its jurisdiction over this fund; and by Dixey's declining to appear at the audit he is not affected by its decree. Both these positions are unsound. The proceedings in the Common Pleas did not divest the jurisdiction of the Orphans' Court to make distribution. Any right to the fund asserted or decided in the Common Pleas must still be presented and passed upon by the Orphans' Court. It is not only over the person of the claimants that the Orphans' Court has jurisdiction, but also over the fund. It alone can order its distribution. This neces-

sarily gives it power to hear and determine all questions arising in the distribution. To decide not only between conflicting claims, but if there be none such, then who are entitled to the fund. The omission of any one there to present his claim does not impair the force and effect of the decree giving the fund to another."

In Hammett's Appeal, 83 Pa. 392, 395, Chief Justice Agnew, speaking for the court, said: "Outside of decided cases when we examine the subject in the light of reason and necessity, the distribution of a decedent's estate among all entitled to have it, must belong to the Orphans' Court. It has possession of the fund, for it controls and directs all those who have its custody, and it is only through its decrees the fund can be reached. It is true the remedy of the creditor to establish his debt in a common-law court is not taken away, for this may be necessary to stop the running of the Statute of Limitations, to decide disputed and complicated questions, and make the settlement afterwards before the auditors more easy and convenient. But this does not, *ipso facto*, bring the pursuing creditor on the fund in the Orphans' Court. On the contrary, the law gives a remedy to prevent a sale under execution, and to carry the creditor into the Orphans' Court, when the condition of the estate requires it to prevent a sacrifice of the general interest. The creditor who desires to share in the fund in the hands of an executor or administrator, must present his claim before the auditors, and when there, it is subject to attack, and he must establish it. If he have already established it in a court of law, it is so much the better, but if not under the decisions heretofore cited, he must support his right to share in the fund before the auditors, by proving it. Thus it is evident that a proceeding in a common-law court to establish a claim, while it may be a reasonable ground for the exercise of the sound discretion of the Orphans' Court, in suspending proceedings in distribution for a reasonable time, and to a reasonable part of the estate, necessary to satisfy the demands of creditors, according to the 39th and 40th sections of the Act of 24th February 1834 (Purd. 447-8), confers no jurisdiction on the former court to withdraw the fund from the power or control of the Orphans' Court. Of necessity, as we have seen, the latter court must proceed to distribute the fund, and cannot be hindered or delayed by actions pending in other courts, beyond a time which its own exercise of discretion may determine to be necessary. It would be a most ruinous doctrine that estates could be tied up under a claim of litigation elsewhere, when the Orphans' Court has full power to adjudicate all claims of the creditors. If it were so, not only legatees and distributees but domestic creditors might have to wait the bidding of distant tribunals not in sympathy and having no motive to speed a cause. Our conclusion does not affect the prerogative of other courts, but only the rights of the creditors. They may, if they choose, persist in a common-law suit to the end to reach real estate or some other fund, but if they fail to come in on a fund in due course of distribution in the Orphans' Court, after notice of the proceeding there, they may lose their grasp upon a fund which that court alone has jurisdiction to distribute among the creditors." See also Boys' Estate, 1 Pa. C. C. 66.

Thus we find the exact question before us in the instant case decided by several lower courts whose opinions carry much weight with us, and also in several cases by the Supreme Court, which are binding on us. We would be compelled to hold with the auditor on this question by these decisions, even if not otherwise satisfied with his conclusions, but we are satisfied with the correctness of his findings even without those authorities.

We were asked to refer the matter back to the auditor pending the termination of the suit in the common pleas. This we cannot do, as the orphans' court

had jurisdiction and the creditor proceeded as he was required to do in presenting his claim before the auditor, and the auditor was correct in passing on it.

As to the second reason for referring the report back to the auditor, or overruling him, advanced by the exceptant, we cannot agree with said exceptant. The findings of fact of an auditor, he having an opportunity to see and hear the witnesses, have the weight of a verdict of a jury and will not be set aside by the court except for such grounds as would justify the setting aside of such a verdict and granting a new trial. We have examined the evidence in the instant case and have come to the conclusion that, with that rule of law before us, the findings of the auditor should not be disturbed.

Now, September 18, 1934, all the exceptions filed to said auditor's report are overruled and said report is confirmed.

From Albert Strite, Chambersburg, Pa.